105 S.W.3d 222 (2003)
In the Interest of U.P., a Child.
No. 14-02-00126-CV.
Court of Appeals of Texas, Houston (14th Dist.).
April 17, 2003.
*224 Danny Lynn Hoke, Stephen A. Doggett, Richmond, for appellants.
David Christopher Newell, Richmond, Ellen Yarrell, Houston, Marlene M. Zinsmeister, Teana V. Watson, Sugar Land, Walter G. Armatys, Richmond, for appellees.
Panel consists of Justices YATES, ANDERSON and FROST.

OPINION ON MOTION FOR REHEARING
JOHN S. ANDERSON, Justice.
We withdraw our opinion issued January 23, 2003, substitute the following opinion in its place, and overrule appellant's motion for rehearing.
*225 Following a bench trial, appellant's parental rights over daughter U.P. were terminated. On appeal, appellant argues improper termination. Because the record supports the findings that termination is in the best interest of the child and appellant committed acts listed in the Family Code as grounds for termination, we affirm.

PROCEDURAL BACKGROUND
On September 1, 2000, the Texas Department of Protective and Regulatory Services ("TDPRS") filed suit to terminate appellant's parental rights. The one-year dismissal date for this suit was September 3, 2001. On June 21, 2001, on a motion by the TDPRS, the trial court extended the dismissal date to February 25, 2002, pursuant to § 263.401 of the Texas Family Code.
On January 2, 2002, U.P.'s foster parents filed a petition to intervene seeking to adopt U.P. After a bench trial, the trial court entered a written order terminating appellant's parental rights. Appellant's motion for a new trial was overruled. Appellant made a timely request for findings of fact and conclusions of law, which the trial court made, and gave timely notice of appeal.[1]

FACTUAL BACKGROUND
TDPRS took U.P. into protective custody a week after she was born on August 30, 2000, addicted to cocaine and barbiturates. During her short life, the child has suffered from numerous medical problems, including intrauterine growth retardation, an umbilical hernia, sleep apnea or Sudden Infant Death Syndrome (SIDS), reflux, reactive airway disease, a crossed eye, and severe developmental delays. She was premature at birth and had below average birth weight. She has undergone surgery without the benefit of anesthetics because of her cocaine addiction. She currently resides with foster parents with expertise in caring for children with special needs.
U.P. was homebound for the first twelve months of her life. She was on a SIDS monitor for seven months, continues to require frequent medications, and has severe digestive problems. At nine months of age, she underwent surgery for an umbilical hernia. The surgery was unsuccessful; the child will undergo a second operation as soon as medically practicable. At the time of trial, U.P. was 16 months old and required (1) feedings every two hours to reduce regurgitation due to reflux, (2) medication to keep her lungs clear, and (3) constant comforting to enable her to sleep. She awakens almost every hour throughout a typical night and must be held in order to fall back asleep. U.P.'s pediatrician testified that U.P. is likely to suffer from developmental delays, emotional instability, and attention deficit disorder (ADD) for life.
Prior to U.P.'s birth, appellant and U.P.'s mother used illegal drugs together. Although appellant claims he did not know U.P.'s mother could get pregnant and denies ever having given the mother crack cocaine after learning of her pregnancy, evidence suggests he provided the mother with drugs even after knowing of her pregnancy.
It is uncontroverted that appellant supplied her with illegal drugs before being aware of her pregnancy and that he knew she used illegal drugs while pregnant. Although appellant states he attempted to stop U.P.'s mother from using cocaine during her pregnancy, he never called the *226 police, never sought to have the mother admitted into drug rehabilitation, and never reported the drug abuse to Child Protective Services (CPS).
Appellant admits to his own personal drug abuse before and after U.P.'s mother became pregnant. Appellant agrees with expert testimony that U.P.'s physical disabilities and difficulties are directly related to her having been subjected to drug abuse in utero. Appellant agrees that the actions of U.P.'s mother, combined with his own inaction, placed the child in grave danger.
On September 15, 2000, two weeks after U. P.'s birth, appellant was arrested for, and ultimately convicted of, the manufacture and delivery of cocaine. He served a one-year prison sentence and was released on September 14, 2001. This was appellant's seventh conviction since 1970. His 30-year criminal history includes felony theft, armed robbery and credit card abuse. His sentences have ranged from one to eighteen years in length. At the time of trial, appellant was on parole for the manufacture and delivery of a controlled substance. He has three parole violations.
Although appellant called family members the day of U.P.'s birth to announce he had a daughter, paternity of U.P. was not firmly established until February 1, 2001, when appellant was in prison. In addition to U.P., appellant is the father of three sons, two of whom have been incarcerated following conviction for narcotics-related crimes. Although appellant admits he "wasn't around" much while his sons were growing up, he was around enough in 1994 to be charged with "physical neglect" and "neglectful supervision" of two of the sons. Though never proved, the charges included offering his sons crack cocaine and failing to provide adequate sleeping arrangements and food.
Appellant has repeatedly been notified via court order and receipt of TDPRS petitions that he might lose parental rights if he failed to comply with court-ordered counseling and evaluations. As early as September, 2000, he was ordered to undergo paternity testing, psychological testing, counseling, drug abuse evaluation/assessment, and parenting classes. He was also told at that time that he would have to pay child support if it was determined that he was U.P.'s father.
Appellant's compliance with the trial court's orders has been minimal. He submitted to paternity testing in the months immediately following U.P.'s birth, attended voluntary drug abuse classes while in prison, and underwent psychological evaluation, drug and alcohol assessment, and parenting classes after his release, but it was several weeks after his prison release before appellant began complying with the court order. He did not appear for psychological evaluation or counseling sessions until after the court-ordered dates, and, at the time of trial, had not completed all required services.
Appellant's contact with U.P. has been minimal. Appellant does not correctly state her birthday. He has not consulted with a doctor about her medical condition. He has not demonstrated concern or affection for her by sending her cards or letters or by making attempts to see her at holidays, nor has he made inquiries about visiting her when she was ill. Despite the child's poor health, none of appellant's requests for visitation has ever been denied by CPS or the foster parentsand despite a court order allowing him weekly visitation, appellant has seen his daughter on only four occasions: once in the hospital the day following her birth and three times during the four-month period following his release from prison in September, 2001. One visit was in October, 2001, and two *227 were in November, 2001. He made no visits or attempts to see his daughter in December, 2001, or January, 2002.
Appellant acknowledges that he cannot personally care for his child, provide the 24-hour-per-day supervision required for her care, or take time off to visit doctors or obtain U.P.'s necessary medical treatment. He has a new common-law wife who neither wants the child nor has an interest in caring for her. He admits to a criminal history that raises credibility issues as to his fitness as a parent. He has no health insurance and paid no child support while incarcerated.
The trial court ordered appellant to send $10.00 a month in child support to U.P. while in prison. Though he earned $50.00 a month in commissary money while incarcerated, he did not comply with the order. He states the reason for his failure to pay child support was a misunderstanding of the order; he thought he was not required to make payments until his release and subsequent employment. Nonetheless, appellant acknowledges he could have made arrangements to make the payments had he understood the order and that being in jail was no excuse for failure to provide financially for U.P.
At the time of trial, appellant was working full-time and earning approximately $1,000 per month. After his release from prison, appellant paid $30.00 in child support on November 29, 2001, as a three-month advance payment. He has since made no other child support payments and has made no attempt to pay past child support. His last known illegal drug use was September 15, 2000, the day of his arrest. Appellant states he wants to be in the child's life, wants to see her, and has genuine concern for her.
Testimony indicates that it has always been appellant's intention that U.P. be placed with appellant's mother or sister. Neither appellant's mother nor his sister has filed a petition in intervention or a petition to adopt U.P., however, and neither is a party to this suit. Neither one of these women has expertise in caring for a child with severe medical problems and, after home studies performed by CPS, neither one is deemed a suitable CPS placement option for U.P. Both appellant's mother and sister indicate that, if given custody of U.P., they intend to turn the child over to appellant as soon as he is able to care for her.
Appellant's mother is 74 years old and in poor health. She has seen U.P. once. Appellant's sister is 43 years old and is a single mother of four. She has visited or attempted to visit with U.P. four times and, during each encounter, confrontation has ensued with either U.P.'s foster mother or a CPS official. Evidence of her parenting skills raise credibility issues regarding her care-giving effectiveness: she helped raise two of appellant's other childrenthe two who have criminal histories. When asked how she plans to provide for U.P.'s special needs, she responds that things will "work out on their own."
U.P.'s foster parents are the only parents the child has ever known. They took over U.P.'s care when she was five days old and carry U.P. on their health insurance. Married 21 years, U.P.'s foster parents have experience in caring for and adopting babies born addicted to cocaine. U.P.'s foster mother has a master's degree in education and has taken child development classes. While in the care of her foster parents, U.P. has received medical care from a pediatrician, ophthalmologist, pulmonologist, nutritionist, and physical therapist. A nebulizer has been provided to help deal with her reactive airway disease. In addition, U.P. has been enrolled in a special school that provides a stimulating educational environment. Evidence indicates *228 U.P. has bonded with her foster parents and the couple intends to make her a permanent part of their family.
At trial, appellant readily admitted all evidence related to his criminal history and no evidence controverted his record. In addition, no expert testified that placement with appellant was in the best interest of the child. See Tex. Family Code Ann. § 161.001(2) (Vernon 2000). A CPS caseworker and Court-Appointed Special Advocate (CASA) volunteer, on the other hand, recommended that U.P. be made available for adoption and placed with her foster parents. U.P.'s pediatrician stated that the foster family gives "excellent" care to U.P. and that the "best environment" for the child is with her foster family.

ISSUES ON APPEAL
Appellant asserts six points of error challenging the order terminating his parental rights. In his first three points, he argues there is no evidence or factually insufficient evidence to establish by clear and convincing evidence that he (1) voluntarily left U.P. alone or in the possession of another without providing adequate support for her and remained away for a period of at least six months; (2) knowingly placed or knowingly allowed U.P. to remain in conditions or surroundings that endangered her physical or emotional well-being; or (3) engaged in conduct or knowingly placed U.P. with persons who engaged in conduct that endangered her physical or emotional well-being.
In point of error four, appellant contends there is no evidence or factually insufficient evidence to establish by clear and convincing evidence that termination of U.P.'s relationship with appellant is in her best interest. In points of error five and six, appellant asserts the Family Code time limits for disposition of termination cases are unconstitutional as applied to him, and the trial court erred in denying appellant the opportunity to make final argument.
We begin by addressing appellant's points three and four, challenging the sufficiency of the evidence to support the trial court's findings of conduct under the Texas Family Code § 161.001(1) and best interest of the child under § 161.001(2).

LEGAL AND FACTUAL INSUFFICIENCY
A. Standard of Review
The burden of proof at trial in parental termination cases is by clear and convincing evidence. Tex. Fam.Code § 161.001 (Vernon 2002); In the Interest of J.F.C., 96 S.W.3d 256, 265-66 (Tex.2002). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. In re. C.H., 89 S.W.3d 17, 25-26 (Tex.2002).
When reviewing a "no evidence" or legal sufficiency of the evidence point, therefore, we look at all the evidence in the light most favorable to the finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." In the Interest of J.F.C., 96 S.W.3d at 266. If, after conducting our review of the record evidence, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we conclude that the evidence is legally sufficient. Id.
When reviewing a challenge to the factual sufficiency of the evidence, we give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. Id.; In re. C.H., 89 S.W.3d at 25-26. We determine whether *229 the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. In re. J.F.C., 96 S.W.3d at 266. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. Id. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. Id.
The natural right that exists between parents and their children is one of constitutional dimension. In the Interest of J.W.T., 872 S.W.2d 189, 194-95 (Tex. 1994). A parent's right to "the companionship, care, custody and management" of his or her children is a constitutional interest "far more precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (quoting Stanley v. IL, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). Therefore, in a case terminating parental rights, proceedings should be strictly scrutinized and the involuntary termination statutes strictly construed in favor of the parent. Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985).
B. Discussion
In Texas, to terminate a parent-child relationship, a trial court must find by clear and convincing evidence that (1) termination is in the best interest of the child, and (2) the parent committed one or more of the acts specifically named in the Texas Family Code as grounds for termination. Tex. Fam.Code Ann. § 161.001 (Vernon 2002). Richardson v. Green, 677 S.W.2d 497, 499 (Tex.1984).[2] Proof of one element does not relieve petitioner from establishing the other. Holley v. Adams, 544 S.W.2d 367, 370 (Tex.1976). It is inconsequential that the actions occurred before or after birth. In re. S.F., 32 S.W.3d 318, 322 (Tex.App.-San Antonio 2000, no pet.); Avery v. State, 963 S.W.2d 550, 553 (Tex.App.-Houston [1st Dist.] 1997, no writ).
In this case, the trial court found three grounds under § 161.001 for supporting termination. First, it found appellant had voluntarily left the child alone or in the possession of another without providing adequate support and had remained away for a period of at least six months; second, it found appellant had engaged in conduct, or knowingly placed U.P. with persons who engaged in conduct, that endangered U.P.'s physical or emotional well-being; and third, it found appellant knowingly placed or knowingly allowed U.P. to remain in conditions or surroundings that endangered her physical or emotional well-being. See Tex. Fam.Code Ann. §§ 161.001(1)(C), (D), and (E) (Vernon 2002). The court also found termination was in the best interest of the child. Id. at § 161.001(2).[3]
*230 1. Child's Best Interest
In his fourth point, appellant argues the evidence is legally and factually insufficient to satisfy the requirement of § 161.001(2) that clear and convincing evidence supports the finding that termination of his relationship with U.P. is in her best interest. He asserts there is an alternative to termination mandated by the evidencenamely, to appoint TDPRS or the foster parents as sole managing conservator and appellant as a possessory conservator with court-set possession and access rights.
There is a strong presumption that the best interest of a child is served by keeping the child with the natural parent. Tex. Fam.Code Ann. §§ 153.131(b), 153.191, and 153.252 (Vernon 1996); Landry v. Nauls, 831 S.W.2d 603, 604-05 (Tex. App.-Houston [14th Dist.] 1992, no writ). It is the burden of TDPRS to rebut this presumption. Hall v. Harris County Child Welfare Unit, 533 S.W.2d 121, 122-23 (Tex.App.-Houston [14th Dist.] 1976, no writ). In order to rebut this presumption, there must be clear and convincing evidence of the natural parents' present unfitness. Id. at 123.
To overcome the presumption that the best interest of a child is served by keeping the child with its natural parent, the Texas Supreme Court has examined several factors, namely: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the person seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. Holley, 544 S.W.2d at 372. This list is not exhaustive, nor is evidence required on all nine factors for the court's finding. Id.
To determine the legal and factual sufficiency of the evidence supporting termination as it relates to the best interest of the child, we examine the evidence in light of the Holley factors:
(1) Desires of the child. Because U.P. is a toddler and unable to articulate her wishes, we cannot with certainty determine her desires. However, testimony indicates that U.P. has been well-cared for by her foster family, that she has bonded with her foster family, and that she has spent minimal time in the presence of appellant and his family. While the foster parents seek permanent adoption, appellant seeks temporary placement with his mother or sister. Thus, evidence supports the trial court's best interest finding.
(2) Present and future physical and emotional needs of the child. Children need permanency and security. It is uncontroverted that U.P. has serious medical problems resulting from her cocaine addiction at birth. She follows a strict diet, is on medication to keep her lungs clear, and has difficulty sleeping. Her present and future needs are many and weigh heavily in favor of the court's finding. See e.g. In the Interest of *231 J.N.R., 982 S.W.2d 137, 143-44 (Tex. App.-Houston [1st Dist.] 1998, no pet.) (finding under a different standard of review that evidence was sufficient to establish termination of parental rights was in the best interest of the child where child had a number of problems, including ADD, sleepwalking, and bedwettingrequiring constant adult supervision and father would be in and out of child's life due to arrests).
(3) Present and future emotional and physical danger to the child. Appellant acknowledges both his own and U.P.'s mother's drug abuse endangered his child. He has been convicted of armed burglary, a violent crime, and has been charged with "neglectful supervision" of two other children. The evidence supports the trial court's finding that termination is in the best interest of the child.
(4) Parental abilities of the person(s) seeking custody. It is uncontroverted that appellant is unable to provide a safe and secure home for his child. Home studies by CASA and CPS representatives indicate placement with appellant's mother or sister to be inappropriate. In addition, neither appellant nor his mother or sister possess expertise in caring for a child with U.P.'s special needs and evidence suggests appellant and his mother have difficulty following directions. Evidence pertaining to appellant's parental abilities thus favors the trial court's finding.
(5) Available assistance programs. Appellant is currently attending parenting classes and counseling. His mother and sister are not. While neither appellant nor his mother or sister have discussed how they intend to care for U.P.'s special medical needs, U.P.'s foster parents demonstrate they can provide U.P.'s necessary care. This evidence supports the trial court's best interest finding.
(6) Plans for the child by those individuals or by the agency seeking custody. Neither appellant nor his sister or mother has outlined permanent plans for the child's future other than an intention to reunite U.P. with her father. Both TDPRS and CASA recommend the foster family permanently adopt U.P., as the foster parents have expressed a desire to do in their intervention in this case. This evidence supports the trial court's best interest finding.
(7) Stability of home or proposed placement. Appellant acknowledges he and his new common-law wife cannot yet provide a permanent home for U.P. U.P.'s foster parents, on the other hand, have been married 21 years, have cared for U.P. since she was five days old, and seek to make U.P. a permanent part of their family. This evidence supports the trial court's best interest finding.
(8) Acts or omissions of the parent. Appellant has abused drugs for years and was arrested for the manufacture and delivery of cocaine just two weeks after U.P. was born. That alone is legally sufficient to support a finding that termination is in the child's best interest. See In the Interest of K.C.M., 4 S.W.3d 392, 398 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (applying the legal sufficiency standard approved by the Texas Supreme Court in In the Interest of C.H., the court held evidence of drug addiction's impact on mother's ability to parent was legally *232 sufficient to prove termination of parental rights was in child's best interests). Additionally, appellant has been convicted of theft and burglary, has periodically failed to provide child support, and has failed to visit his daughter more than four times in 16 months.
(9) Any excuse for the acts or omissions of the parent. Appellant claims he did not understand he was required to pay child support while in prison; that he attempted to stop U.P.'s mother from taking drugs after learning she was pregnant; and that he failed to visit U.P. only because of her ill health. However, appellant admits incarceration was no excuse for failure to pay child support and that he knew U.P.'s mother continued to use drugs after becoming pregnant. Thus, there is no excuse for appellant's acts or omissions.
After weighing the evidence as it relates to the nine Holley factors, we conclude there is legally and factually sufficient clear and convincing evidence to support the trial court's finding that termination of the parent-child relationship is in U.P.'s best interest. We therefore overrule appellant's fourth point of error.[4]
2. Endangerment
In point of error three, appellant argues the trial court erred in finding appellant engaged in conduct or knowingly placed U.P. with persons who engaged in conduct that endangered U.P.'s physical or emotional well-being. See TEX. FAM.CODE ANN. § 161.001(1)(E) (Vernon 2002). He argues that he did not endanger U.P. because the relevant time frame for determining whether endangerment has occurred is before the child is removed from the parent's care. See Ybarra v. Texas Dept. of Human Serv., 869 S.W.2d 574, 577 (Tex.App.-Corpus Christi 1993, no writ). He also argues that his behavior towards U.P. personally has always been appropriate and deferential to her health needs.
Appellant's arguments are without merit. Although the Texas Family Code does *233 not define "endanger" as it applies to § 161.001, the Texas Supreme Court defines endangerment as "to expose to loss or injury, to jeopardize." Tex. Dep't of Human Svcs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987). We find appellant engaged in such conduct.
A. Scope of Endangerment
Endangerment encompasses the following:
(1) Endangerment can be exhibited by both actions and failures to act. Lewelling v. Lewelling, 796 S.W.2d 164, 167 (Tex.1990) (finding parent should be named managing conservator unless nonparent offers evidence of "specific actions or omissions" that demonstrate awarding custody to parent would physically or emotionally harm child); Ybarra, 869 S.W.2d at 577 (finding there must be "specific actions or omissions" by parent resulting in physical or emotional harm for endangerment); and In the Interest of D.T., 34 S.W.3d 625, 634 (Tex.App.-Fort Worth 2000, pet. denied) (finding parent's endangering conduct may include "actions or omissions or failures to act"); In the Interest of D.M., 58 S.W.3d 801, 812 (Tex.App.-Fort Worth 2001, no pet.) (finding that termination under § 161.001(1)(E) must be based on more than a single "act or omission").
(2) Endangering acts need not be directed at the child or cause actual injury or threat of injury to the child. In the Matter of W.A.B., 979 S.W.2d 804, 807 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (finding § 161.001(1)(E) does not require causal connection between parent's misconduct and actual harm to the child resulting from that misconduct). See also Boyd, 727 S.W.2d at 533; In the Interest of S.F., 32 S.W.3d 318, 321 (Tex.App.-San Antonio 2000, no pet.).
(3) Endangerment may be satisfied by showing a parent engaged in a "course of conduct" that endangered the child's physical or emotional well-being. In re S.F., 32 S.W.3d at 321 (holding father's criminal behavior before imprisonment and continued misbehavior during prison term showed course of conduct detrimental to child); In the Interest of D.T., 34 S.W.3d 625, 634 (Tex.App.-Fort Worth 2000, pet. denied) (holding that leaving child in foster care while jumping bail, writing bad checks, and being incarcerated was legally sufficient to establish endangering course of conduct); In re J.O.C., 47 S.W.3d 108, 113 (Tex.App.-Waco 2001, no pet.) (holding that not learning proper feeding techniques, failure to follow CPS plan, avoidance of face-to-face contact, and a mere four visits with child in 1.5 years was enough to establish endangering course of conduct).
(4) Endangerment may include evidence that a parent has been imprisoned. Boyd, 727 S.W.2d at 533 (holding that "imprisonment is certainly a factor to be considered by the trial court on the issue of endangerment"); Avery, 963 S.W.2d at 553 (holding that, though imprisonment alone is not sufficient to constitute endangerment, it can be demonstrative of a course of conduct that endangers the emotional well-being of a child); In the Interest of K.M.M., 993 S.W.2d 225, 228 (Tex.App.-Eastland 1999, no pet.) (finding that imprisonment based on a "certain type of voluntary, deliberate and conscious course of conduct" may be *234 considered conduct endangering a child under §§ 161.001(1)(D) or (E)); In the Interest of J.J. and K.J., 911 S.W.2d 437, 440 (Tex.App.-Texarkana 1995, writ denied) (affirming termination of parental rights of father who was frequently jailed, used crack cocaine, and abused wife in presence of children).
(5) Endangerment may include evidence of drug addiction and its effect on a parent's life and his ability to parent. Dupree v. Texas Dep't of Protective and Regulatory Svcs., 907 S.W.2d 81, 84 (Tex.App.-Dallas 1995, no writ). See also Tex. Dep't. of Human Svcs. v. White, 817 S.W.2d 62, 63 (Tex.1991) (finding child's addiction to drugs at birth, combined with evidence of mother's substance abuse and its effect on her parent-child relationship, to be sufficient evidence of endangerment). Endangerment can also include knowledge that a child's mother abused drugs. In the Interest of M.J.M.L., 31 S.W.3d 347, 351-52 (Tex.App.-San Antonio 2000, pet. denied) (finding evidence legally sufficient for endangerment where father knew mother was a drug addict and that she abused drugs while pregnant, even though father attempted to get mother to stop taking drugs).
(6) Endangerment may include what a parent does both before and after birth of a child. In re. M.D.S., 1 S.W.3d 190, 198-99 (Tex.App.-Amarillo 1999, no pet.) (holding that sentences for burglary and sex with a minor, as well as prior convictions of marijuana possession, established endangering course of conduct); In re. S.F., 32 S.W.3d at 322 (holding that criminal behavior before child's birth, coupled with misbehavior during imprisonment, provided sufficient basis to establish course of conduct that endangered child); Avery, 963 S.W.2d at 553 (holding parent's criminal record and previous child abandonment behavior before child's birth were admissible to establish grounds for termination of parental rights.); In the Matter of W.A.B., 979 S.W.2d at 807 (holding, under different standard of review, that mother's criminal history, imprisonment, and illegal drug use during and after pregnancy constituted basis for termination of parental rights).
B. Appellant's Conduct Endangering U.P.'s Physical Well-Being
(1) Appellant was responsible for his conduct while his child was in utero.
Under the Texas Family Code, a "child" is defined as a person under 18 years of age who is not and has not been married or who has not had the disabilities of minority removed. Tex. Fam.Code Ann. § 101.003 (Vernon 2002). However, harm done to a child in utero has generally been recognized in Texas when the child has been born alive.[5]See e.g. Witty v. Amer. Gen. Capital Distrib., Inc., 727 S.W.2d 503, 506 (Tex.1987) (holding parent cannot *235 bring a claim for fetus' in utero injuries under Texas Wrongful Death or Survival Statute unless child is born alive); Brown v. Shwarts, 968 S.W.2d 331, 334 (Tex.1998) (holding fetus can be a patient before birth under the Texas Medical Liability Act if child is born alive); Cuellar v. State, 957 S.W.2d 134, 140 (Tex.App.-Corpus Christi 1997, pet. ref'd) (holding person can be guilty of manslaughter under Texas intoxification manslaughter statute for death resulting from in utero injuries as long as child is born and lives for a period of time before death.); Leal v. C.C. Pitts Sand and Gravel, Inc., 419 S.W.2d 820, 822 (Tex. 1967) (holding child has right to recover for prenatal injuries if subsequently born alive).
Several Texas statutes recognize the rights of unborn children who are born alive. See e.g. Tex. Prob.Code Ann. §§ 34A and 37A (Vernon 2002) (allowing unborn children to be represented in probate matters and to disclaim property inheritances); TEX. PROP.CODE ANN. §§ 112.010(C)(2) and 115.014-.015 (Vernon 1995) (allowing unborn children to disclaim trust interests and to have guardians ad litem appointed); and Tex. Fam.Code Ann. § 160.001(1)(R) (Vernon 2002) (allowing for termination of the parent-child relationship when there is clear and convincing evidence that termination is in the best interest of the child and parent has caused the child to be born addicted to alcohol or illegally-obtained controlled substance).[6]
(2) Appellant's conduct endangered his child before birth.
Prior to U.P.'s birth, appellant and U.P.'s mother used illegal drugs together. Although appellant now claims he discontinued providing drugs to U.P.'s mother after learning of her pregnancy, there is evidence to suggest he continued to provide the mother with illegal drugs even after knowing of her pregnancy. Because the judge is the exclusive trier of the facts, the credibility of the witnesses, and the weight to be given to each witness' testimony, the trial court was free to believe or disbelieve appellant's claim that he stopped providing illegal drugs to U.P.'s mother after discovering she was pregnant.
Additionally, appellant freely admits to his own personal drug abuse before and after U.P.'s mother became pregnant; he admits he knew U.P.'s mother continued to use illegal drugs; he admits he failed to report her to the CPS or police; he acknowledges he did not seek assistance or drug counseling on her behalf; and he agrees that his inaction, combined with the actions of U.P.'s mother, placed his child in grave danger and caused her health problems.
Appellant's actions demonstrate appellant engaged in conduct that endangered U.P.'s physical well-being. Indeed, under almost identical facts, the San Antonio Court of Appeals reached a similar conclusion. See In the Interest of M.J.M.L., 31 S.W.3d 347 (Tex.App.-San Antonio 2000, pet. denied). In M.J.M.L., a child born addicted to drugs was taken at birth by CPS and placed with a foster family. When the child's father challenged the right of the court to consider conduct occurring before the child's birth, the court found legally sufficient evidence of an endangering course of conduct when the father knew the mother was a drug addict, knew she had left a drug clinic to return to *236 a life of drug abuse, and knew his own absence would mean his soon-to-be-born child would be left in the care of a drug-addicted mother. Id. at 352.
Appellant nevertheless contends his physical endangerment of U.P. was done unknowingly and so cannot be used against himindeed, he says he personally stopped giving U.P.'s mother drugs once he knew she was pregnant and that he did not know U.P.'s mother could become pregnant. Scienter, however, is not required for appellant's own acts under § 161.001(1)(E); scienter is required only under subsection (E) when a parent places his child with others who engage in endangering acts.[7]
Appellant claims he has changed and that his past indiscretions should not be held against him. Appellant's track record, however, raises doubt as to his ability to change: he continued to commit crimes even after the birth of his other children; he violated parole three times; and he abused and sold illegal drugs even after knowing of U.P.'s problems at birth. As the trier of fact, the trial court was allowed to believe or disbelieve appellant's testimony.
Welike our sister court in M.J.M.L.  hold evidence that a parent provided a controlled substance to the mother while the child was in utero, resulting in health problems emanating solely from the presence of that substance in the child's blood during gestation, is clear and convincing evidence of conduct endangering the physical well-being of a child under Family Code § 161.001(1)(E).
C. Appellant's Conduct Endangering U.P.'s Emotional Well-Being
Appellant also engaged in conduct that endangered U.P.'s emotional well-being. Specifically, he sold illegal drugs two weeks after her birth and was arrested and incarcerated for one year for the offense. This resulted in appellant being absent from U.P.'s life for more than twelve months. Because U.P.'s mother was also absent, appellant's conduct led to U.P.'s not knowing either of her biological parents. A factfinder could reasonably conclude from the evidence that this created an emotional vacuum in U.P.'s life.
The evidence of appellant's conduct after U.P.'s birth was legally and factually sufficient to support the trial court's finding of endangerment to U.P.'s emotional well-being. Thus, we affirm the court's finding of physical or emotional endangerment under § 161.001(1)(E). Accordingly, we overrule point of error three.
Because appellant's parental rights can be terminated with a finding of best interest of the child and any one of the three § 161.001(1) grounds challenged by appellant, we need not address points of error one or two.
CONSTITUTIONALITY OF STATUTORILY-REQUIRED TIME LIMITS IN PARENTAL TERMINATION CASES
In his fifth point of error, appellant challenges the constitutionality of the *237 deadline requiring a parental termination suit to be dismissed if the court has not rendered a final order or granted an extension by the first Monday after the first anniversary of issuance of a temporary order. Tex. Fam.Code Ann. § 263.401(a) (Vernon 2002). Appellant argues that he was harmed because enforcement of the statutory deadline forced him to go to trial before he could complete his services and establish a better track record. He asserts he was deprived of substantive due process and due course of law and harmed under the open courts and separation of powers provisions of the Texas Constitution.
As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion. Tex.R.App. P. 33.1(a)(1). A constitutional challenge not raised properly in the trial court is waived on appeal. Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex.1993); Segovia v. Texas Dep't. of Protective and Regulatory Serv., 979 S.W.2d 785, 788 (Tex.App.-Houston [14th Dist.] 1998, pet denied).
Although appellant made no constitutional challenge during trial, he argues that waiver does not apply in his case because of the heightened standard of review required in parental rights termination cases. In the Interest of A.P. and I.P., 42 S.W.3d 248, 256 (Tex.App.-Waco 2001, no pet.). The A.P. case, however, deals with a sufficiency challenge, not a constitutional challenge. Id. at 255. Hence, A.P. is inapplicable. We find appellant waived his complaint and overrule point of error five.

FAILURE TO ALLOW FINAL ARGUMENT
In his sixth point of error, appellant argues that the trial court erred in denying him final argument. Appellant relies on the Texas Rules of Civil Procedure, which state that after presentation of evidence is concluded and the charge read, parties may argue a case to the jury. TEX.R. CIV. P. 269(a).
However, appellant failed to preserve error. As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection or motion and (2) the trial court ruled on the request, objection, or motioneither expressly or implicitlyor refused to rule on it and the complaining party objected to the refusal. Tex.R.App. P. 33.1(a)(1) and (2).
Here, the trial court pronounced its judgment immediately after both sides restedthus neither plaintiff nor defendant had the opportunity to make a closing argument. Instead of objecting to this apparent denial of a final summation, defense counsel requested the trial court state its specific grounds for the judgment.
This the trial court didat which point, defense counsel noted that not all of the grounds found by the trial court for its judgment appeared in the State's pleadings. The trial court then responded:
Court: If they weren't in the pleadings, then ... the decree cannot be based on those grounds.... To the extent they are, I order that they be put into the decree.
Defense Counsel: If given a chance to do an argument, that is what I was going to point out in my opinion. I don't think any of the things they pled were proven by clear and convincing evidence. They are stuck with their pleadings.
At this point, the trial court and both trial counsels discussed the content of the State's pleadings and the content of the *238 court's final decree. At no time did defense counsel return to the subject of his right to closing argumenteither through a formal objection or through a request for a ruling. Consequently, appellant waived his objection to the court's denial of final summation. See Tex.R.App. P. 33.1(a); Butler v. State, 872 S.W.2d 227, 236 (Tex. Crim.App.1994). Accordingly, we overrule appellant's final point of error.

CONCLUSION
Having overruled all of appellant's points of error, we affirm the trial court's order terminating appellant's parental rights.
KEM THOMPSON FROST, Justice, concurring.
Applying the standards of review recently announced by the Texas Supreme Court, the record contains legally and factually sufficient evidence to support the trial court's findings that appellant engaged in conduct that endangered U.P.'s physical or emotional well-being and that termination of appellant's parental rights is in U.P.'s best interest. See TEX. FAM. CODE. § 161.001; In re J.F.C., 96 S.W.3d 256, 264-67 (Tex.2002); In re C.H., 89 S.W.3d 17, 25-26 (Tex.2002); Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976) (promulgating a nonexclusive list of factors that may be considered when determining the best interest of the child). Appellant did not preserve error as to his fifth and sixth points by asserting these complaints and obtaining a ruling in the trial court. See Tex.R.App. P. 33.1(a). Though I do not join in the majority's analysis, I concur in the court's judgment.
NOTES
[1] The trial court also terminated the parental rights of U.P.'s mother; however, she has not filed an appeal.
[2] "Clear and convincing evidence" is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam.Code Ann. § 101.007 (Vernon 2002).
[3] Although requested, the trial court did not file its findings of fact as a separate document pursuant to Rule 299a of the Texas Rules of Civil Procedure. See Tex.R. Civ. P. § 299a. Rather, the trial court recited its findings in its judgment. No findings were made in a separate document. Although the trial court's findings were erroneously included in its order of termination, they still have probative value as long as they do not conflict with those in a separate document. See Hill v. Hill, 971 S.W.2d 153, 157 (Tex.App.-Amarillo 1998, no pet.); Martinez v. Molinar, 953 S.W.2d 399, 401 (Tex.App.-El Paso 1997, no writ). Absent findings in a separate document made pursuant to Rules 297 and 298, which conflict with the findings set out in the judgment, the findings in the judgment will not be denied probative value. Hill, 971 S.W.2d at 157.
[4] Appellant argues that even if it is not in U.P.'s best interest to grant appellant full custody, the trial court should have named him possessory conservator. However, appellant cites no place in the record, pleadings, or his request for findings of fact and conclusions of law where he requested a finding on the issue of appellant being named possessory conservator. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion. Tex.R.App. P. 33.1(a)(1); Schlafly v. Schlafly, 33 S.W.3d 863, 867 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (party complaining on appeal must make trial court aware of complaint and obtain ruling prior to appeal). Because appellant never presented this alternative to the trial court and raises it for the first time on appeal, his right to have this court rule on the trial court's failure to name him possessory conservator has been waived. See London v. London, 94 S.W.3d 139, 143 (Tex.App.-Houston [14th Dist.] 2002, no pet. h.)(finding wife waived issue that trial court erred in restricting children's primary residence to one county, rather than one county and contiguous county, where wife failed to raise argument orally or in writing to trial court); In the Interest of T.J.S., 71 S.W.3d 452, 458 (Tex.App.-Waco 2002, pet. denied) (finding father waived any error in trial court's failure to instruct jury on rebuttable parental presumption regarding appointment as managing conservator.); Connors v. Connors, 796 S.W.2d 233, 236 (Tex.App.-Fort Worth 1990, writ denied) (finding father's failure to present issue of appointment as managing conservator waived alleged error).

Appellant argues that because both the State and adoptive parents pleaded, in the alternative, that appellant be named possessory conservator with limited access in the event the trial court failed to terminate appellant's parental rights, there were sufficient pleadings to support his request for possessory conservatorship; however, appellant fails to cite authority for this proposition.
[5] See Aaron Wagner, Texas Two-Step: Serving Up Fetal Rights by Side-Stepping Roe v. Wade Has Set the Table for Another Showdown on Fetal Personhood in Texas and Beyond, 32 Tex. Tech. L.Rev. 1085, 1100 (2001). According to Wagner, the "live birth" requirement or "born alive" rule for claims in Texas civil suits and criminal prosecutions evolved from English common law. Id. at 1100. See Magnolia Coca Cola Bottling Co. v. Jordan, 124 Tex. 347, 78 S.W.2d 944, 945 (1935) (holding that because the common law does not recognize the existence of a fetus prior to birth, no cause of action exists for prenatal injuries to a fetus unless it is born alive.).
[6] It is unclear why TDPRS did not pursue termination of appellant's rights under § 160.001(1)(R), as well as under subsections (C), (D) and (E). Section 161.001(1)(R) was in effect before U.P. was born. In any case, the trial court did not include such a finding in its findings of fact and conclusions of law.
[7] Subsections (D) and (E) differ in the source of the physical and emotional endangerment to the child. See In the Interest of S.H.A., 728 S.W.2d 73, 83-84 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). Under (D), the environment, as opposed to conduct, must be the source of endangerment to the child. Id. at 84. Under (E), the cause of the danger must be the parent's or another's actions or failures to act Id. at 83-84. Although both subsections reference knowledge on the part of the parent that there is a danger, subsection (E) requires only that the parent know others are engaging in endangering conduct; it does not require the parent to know that his own conduct is dangerous. Tex. Fam.Code Ann. § 161.001(1)(E) (Vernon 2002).