**Appellant's Motion for Rehearing Overruled; Appellant's Motion for En Banc Reconsideration Denied as Moot; Opinion of July 19, 2012, Withdrawn; Affirmed and Substitute Memorandum Opinion filed August 30, 2012.**



### In The

# Fourteenth Court of Appeals

### NO. 14-12-00186-CV

### IN THE INTEREST OF C.M.C. AND C.E.C., Children

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2006-03268J**

## SUBSTITUTE MEMORANDUM OPINION ON REHEARING

We overrule appellant's motion for rehearing, withdraw our memorandum opinion issued July 19, 2012, and issue the following substitute memorandum opinion. We further deny as moot appellant's motion for en banc reconsideration.

This case is an appeal from the trial court's judgment terminating appellant's parental rights regarding one child and determining appellant is not the biological father of another child. In six issues, appellant contends the evidence is legally and factually insufficient to support termination of his parental rights, section 161.001(1)(O) of the

Family Code is unconstitutional as applied to him, and the trial court erred in its conservatorship orders and by admitting certain hearsay. We affirm.

## I. BACKGROUND

After Hurricane Katrina, "mother" and her three children, C.M.C., C.E.C., and G.L.C., relocated from Louisiana to Houston, Texas. During February 2006, the Department received a referral, alleging "mother" neglectfully supervised the children. On March 20, 2006, the Department took emergency custody of the children and was later appointed as the children's managing conservator. Appellant, a resident of Louisiana, contacted the Department, claiming to be C.M.C.'s and C.E.C.'s father. The Department sent appellant a family service plan ("FSP"), requiring him to complete various services to establish his fitness to provide a home for the children. Appellant agreed to complete the services and signed the FSP.

Subsequently, the Department filed a petition, seeking termination of the parental rights of "mother" and appellant. The trial court appointed appellant counsel. Following a trial to the bench on September 18, 2007, the trial court signed a decree ("2007 Decree"), terminating "mother's" parental rights under section 161.001 of the Family Code and appellant's parental rights under section 161.002 of the Family Code, which authorizes termination of an alleged father's parental rights when the alleged father fails to timely file an admission of paternity. *See* Tex. Fam. Code Ann. §§ 161.001 (West Supp. 2011), 161.002 (West 2008). The trial court did not adjudicate whether appellant was the biological father of C.M.C. and C.E.C. Additionally, the Department was appointed sole managing conservator of the children.

"Mother" and appellant appealed the 2007 Decree to this court. *See In re C.M.C.*, 273 S.W.3d 862 (Tex. App.—Houston [14th Dist.] 2008, no pet.). This court (1) affirmed the termination of "mother's" parental rights, (2) reversed termination of appellant's parental rights, (3) reversed appointment of the Department as the sole managing conservator of C.M.C. and C.E.C., and (4) remanded the case for further proceedings. *Id.* at 883.

On remand, the trial court ordered appellant to submit to DNA testing to determine the paternity of C.E.C. and C.M.C. As discussed below, the DNA testing established that appellant is not C.M.C.'s father. At some point, C.M.C., C.E.C., and their other sibling moved to an out-of-state foster family, who adopted C.M.C. before commencement of the second trial.

On December 8, 2011, the trial court conducted the second trial regarding the Department's request for termination of appellant's parental rights. Following trial, the trial court signed a decree ("2012 Decree"), determining appellant is C.E.C's father but not C.M.C.'s father, terminating appellant's parental rights relative to C.E.C. based on section 161.001(1)(O) and the child's best interest, and appointing the Department sole managing conservator of C.E.C.

## II. LEGAL AND FACTUAL SUFFICIENCY

In his first and sixth issues, appellant contends the evidence is legally and factually insufficient to support the trial court's termination of his parental rights regarding C.E.C. based on section 161.001(1)(O) and the best interest of the child.

### A. Standard of Review

The burden of proof in parental-termination cases is by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007 (West 2008); *In re J.F.C.*, 96 S.W.3d at 264. A trial court may terminate parental rights only upon proof by clear and convincing evidence that the parent has committed an act set forth in section 161.001(1) *and* termination is in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001(1), (2).

When considering legal sufficiency of the evidence to support termination, we consider all evidence in the light most favorable to the finding to determine whether a

3

reasonable factfinder could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 265–66. We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.*

When reviewing factual sufficiency to support termination, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *Id.* The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of its finding is so significant a factfinder could not reasonably have formed a firm belief or conviction. *Id.*

The relationship between parents and their children is one of constitutional dimension. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re U.P.*, 105 S.W.3d 222, 229 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Therefore, a court should strictly scrutinize termination proceedings and the involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re U.P.*, 105 S.W.3d at 229.

## B. Analysis

### 1. Section 161.001(1)(O)

To support termination under section 161.001(1)(O), the Department must prove by clear and convincing evidence that the parent has:

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Tex. Family Code Ann. § 161.001(1)(O). Appellant presents several arguments why the evidence is insufficient to support a finding that he violated this section.

4

First, appellant argues that he was not required to comply with a court-ordered FSP under section 161.001(1)(O) until the trial court determined he was C.E.C.'s father—a finding the trial court did not make until it signed the 2012 Decree. According to appellant, until that point, he was merely an "alleged father" whose rights were not subject to compliance with section 161.001(1). However, contrary to appellant's argument, "the procedural and substantive standards for termination of parental rights apply to the termination of the rights of an alleged father." Tex. Fam. Code Ann. § 161.002(a). "The admission of paternity . . . gives [an alleged father] the right to proceed to trial and require the [Department] to prove by clear and convincing evidence that he engaged in one of the types of conduct listed in section 161.001(1) and that termination is in the best interest of his child." *Phillips v. Tex. Dept. of Protective and Regulatory Servs.*, 25 S.W.3d 348, 357 (Tex. App.—Austin 2000, no pet.); *see also In re D.A.*, No. 2-09-460-CV, 2010 WL 3618718, at *1, *5 (Tex. App.—Fort Worth Sept. 16, 2010, no pet.) (mem. op.); *In re M.D.S.*, 1 S.W.3d 190, 196–201 (Tex. App.—Amarillo 1999, no pet.). This court concluded as much in the prior appeal. *In re C.M.C.*, 273 S.W.3d at 882.[1] Accordingly, the Department properly sought termination of appellant's parental rights under section 161.001(1)(O) even though his paternity had not yet been finally adjudicated.

Next, appellant contends that no evidence was presented during trial proving the existence of court orders (1) specifically establishing the actions necessary for him to obtain the return of C.E.C. or (2) appointing the Department permanent or temporary managing conservator of C.E.C. However, this court has consistently held we may

---

[1] Because section 161.002(a) provides that standards for termination of parental rights apply to termination of an *alleged* father's parental rights, we reject appellant's contention that subjecting an alleged father to termination under section 161.001(1)(O) violates principles of statutory construction and prohibitions against ex post facto laws.

Furthermore, we find unpersuasive appellant's contention that he had no duty to comply with the FSP because only actual parents are subject to, and have the ability to modify, such plans under Chapter 263. Appellant agreed to comply with the FSP, and no evidence suggests he ever requested the Department to modify the FSP. Moreover, nothing in the record demonstrates appellant ever objected to the trial court's order that he comply with the FSP.

presume the trial court took judicial notice of the record without any request being made and without any announcement that it has done so. *See In re A.W.B.*, No. 14-11-00926-CV, 2012 WL 1048640, at *3 (Tex. App.—Houston [14th Dist.] Mar. 27, 2012, no pet.) (mem. op.) (presuming trial court took judicial notice of order adopting FSP).[2] Thus, we presume the trial court took judicial notice of its orders.

The record contains a June 2007 order titled "Additional Temporary Orders to Obtain Return of the Child(ren)" in which the trial court ordered appellant to, *inter alia*, complete all services outlined in the FSP; the FSP was admitted as an exhibit during trial. Additionally, the record contains an April 2006 order titled "Temporary Order Following Adversary Hearing" in which the trial court appointed the Department as temporary managing conservator of C.E.C.

Appellant contends these temporary orders were not effective upon remand.[3] However, under the unique facts of this case, the trial court was not required to find that the temporary orders were effective at the time of the second trial in order to terminate appellant's parental rights under section 161.001(1)(O). In reviewing sufficiency of the evidence, we consider all of the evidence presented, which includes appellant's failure to comply with the court-ordered FSP *prior to* the original trial during September 2007. As discussed in detail below, the Department presented sufficient evidence during the second trial in support of its contention that appellant did not comply with court-ordered services from June 2007 until September 2007—the period when C.E.C. was in the managing conservatorship of the Department *and* appellant was court ordered to comply with the

---

[2] In his reply brief, appellant cites a case in which the Waco Court of Appeals declined to presume the trial court took judicial notice of a court order adopting a FSP because such presumption would violate the parent's due process rights. *In re C.L.*, 304 S.W.3d 512, 517 (Tex. App.—Waco 2009, no pet.). However, this court recently declined to follow *In re C.L. See In re A.W.B.*, 2012 WL 1048640, at *2–3.

[3] Appellant contends his constitutional right to notice and hearing would be violated if the temporary orders were automatically reinstated upon reversal of the 2007 decree. However, we need not consider this issue because the evidence presented during the second trial is sufficient to establish appellant violated section 161.001(1)(O) prior to the original trial, before the temporary orders were extinguished by the 2007 Decree.

6

FSP. Although this evidence pertains to appellant's conduct during 2007, we have found no statutory or case authority preventing the trial court from considering appellant's failure to comply with the court-ordered FSP during 2007 when determining whether he violated section 161.001(1)(O). Furthermore, when determining the best interest of the child under section 161.001(2), the trial court was free to consider the fact that appellant's violations of section 161.001(1)(O) occurred during 2007.

Next, appellant argues there is no evidence that C.E.C. was removed from any parent under Chapter 262 for abuse or neglect. However, as reflected in the 2007 Decree previously affirmed by our court, the trial court found by clear and convincing evidence that the children were in the Department's conservatorship as a result of being removed from "mother" under Chapter 262 for abuse or neglect of the children; the 2007 Decree was admitted at trial without objection or limitation. This evidence supports a finding that C.E.C. was removed from "mother" under Chapter 262 for abuse or neglect of C.E.C. *See In re S.N.*, 287 S.W.3d 183, 190 n.2 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding family service plan, admitted without objection, contained sufficient factual recitations to support finding children removed for abuse or neglect).

Nevertheless, appellant contends there is no evidence C.E.C. was removed from *appellant* due to *appellant's* abuse or neglect of C.E.C. Appellant argues that a parent who faces termination for failing to comply with a court order under 161.001(1)(O) must be the same parent from whom the child was removed. However, this court has previously held the opposite, concluding "that subsection (O) does not require that the parent who failed to comply with a court order be the same parent whose abuse or neglect of the child warranted the child's removal." *Id.* at 188–90; *see also In re M.N.*, No. 11-10-00129-CV, 2011 WL 917837, at *3 (Tex. App.—Eastland Mar. 17, 2011, no pet.) (mem. op.) (adopting *In re S.N.*).

Appellant cites *In re E.C.R.*, in which the First Court of Appeals recently concluded a parent's abusive conduct toward one child did not support a finding that another child was removed from the parent as a result of abuse or neglect as required to

7

support termination under section 161.001(1)(O). --- S.W.3d ---, No. 01-11-00791-CV, 2012 WL 897777, at *4 (Tex. App.—Houston [1st Dist.] Mar. 15, 2012, no pet. h.). In light of *In re E.C.R.*, appellant requests that we overrule *In re S.N.* However, we may not overrule a prior panel opinion of this court absent an intervening change in the law by the legislature or a higher court or by decision of this court sitting en banc. *MobileVision Imaging Servs., L.L.C. v. LifeCare Hospitals of N. Tex., L.P.*, 260 S.W.3d 561, 566 (Tex. App.—Dallas 2008, no pet.). Furthermore, *In re E.C.R.* is inapposite because the First Court of Appeals did not consider whether the parent whose rights are challenged under section 161.001(1)(O) must be the same parent from whom the children were removed for abuse or neglect.

Finally, we determine whether appellant failed to comply with the trial court's order establishing the actions necessary for him to obtain the return of C.E.C. During trial, a caseworker[4] testified without objection or contravention that appellant has not "done anything in the [FSP]," which necessarily includes the period during 2007 before the first trial when appellant was initially ordered to comply with the FSP. More specifically, the caseworker testified appellant has not visited C.E.C.,[5] demonstrated he attended a parenting class, or completed a psychological evaluation. Pursuant to the FSP, appellant was required to complete each of these services. We conclude the evidence is legally and factually sufficient to support a firm belief or conviction that appellant failed to comply with the court-ordered FSP. Accordingly, we overrule appellant's first issue.

---

[4] Several different caseworkers have managed this case.

[5] Appellant notes the caseworker testified it was the Department's position appellant could not have access to, or possession of, C.E.C. until appellant's paternity had been established. However, this testimony does not necessarily mean the Department refused to allow appellant to have supervised visits with C.E.C., particularly in light of the caseworker's testimony that the Department arranged visits for appellant when the FSP was first developed.

## 2. Best Interest of the Child

In his sixth issue, appellant contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of C.E.C.

In reviewing sufficiency of the evidence to support a best-interest finding, a court may consider several factors, including (1) desires of the child, (2) present and future physical and emotional needs of the child, (3) present and future emotional and physical danger to the child, (4) parental abilities of the persons seeking custody, (5) programs available to assist those persons seeking custody in promoting the best interest of the child, (6) plans for the child by the individuals or agency seeking custody, (7) stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d at 230. This list is not exhaustive, nor is evidence required on all nine factors to support a finding that termination is in the child's best interest. *Holley*, 544 S.W.2d at 372; *In re U.P.*, 105 S.W.3d at 230.

Although there is a strong presumption that it is in the child's best interest to allow the natural parent to retain custody, the presumption ceases when evidence to the contrary is presented. *In re A.I.G.*, 135 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, no pet.). The same evidence of acts or omissions that supports termination under section 161.001(1) may be probative in determining a child's best interest. *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

At the time of trial, the children had been in the Department's custody for over five years. The caseworker testified that C.E.C. and his two brothers have been living with foster parents for "quite sometime" and are happy. The foster parents adopted C.E.C.'s brothers and desire to adopt C.E.C.

During May 2006, appellant contacted the Department regarding the children and, on August 21, 2006, signed the FSP. Nevertheless, appellant never completed the services outlined therein nor ever visited C.E.C. *See, e.g.*, *In re D.M.D.*, 363 S.W.3d 916, 926 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (considering, among other acts and omissions, parent's refusal to cooperate with Department as evidence termination was in child's best interest).

These facts strongly support a finding that the best option for providing C.E.C. with a permanent family environment is to terminate appellant's parental rights, facilitating C.E.C.'s adoption by the foster family to which his brothers belong. "The goal of establishing a stable, permanent home for a child is a compelling interest of the government." *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ) ("[T]he need for permanence is the paramount consideration for the child's present and future physical and emotional needs."). Thus, we conclude the evidence is legally sufficient to support a firm belief or conviction that termination of appellant's parental rights is in the best interest of C.E.C.

We recognize, some facts weigh in favor of appellant in the best-interest analysis. The children were removed, not from appellant, but from their mother, and the Department witnesses testified there is no evidence appellant's residence is unsafe or that he would harm the children. Additionally, the caseworker testified that the Department's sole effort to reunify C.E.C. and appellant was instructing appellant to complete the services outlined in the FSP. Nevertheless, these facts do not negate evidence supporting a finding that C.E.C.'s long-term interests will be best served by permanency with his foster family. Notwithstanding the fact that the Department did not maintain contact with appellant to ensure he completed his services, appellant failed to complete any of the services after agreeing to do so and signing the FSP. Furthermore, the Department supervisor for the case since 2009 testified she is unaware "of any time that [appellant] . . . contacted the [Department] to ask for visitation with his children." This evidence supports a finding appellant was not interested in establishing a relationship with C.E.C.

10

Clearly, the trial court could have reasonably found it was in C.E.C.'s best interest not to be removed from his foster family and brothers and placed with appellant, who is essentially a stranger to C.E.C.[6] Accordingly, we hold the evidence is factually sufficient because evidence weighing against the trial court's finding is not so significant it precluded the court from reasonably forming a firm belief or conviction that termination was in the best interest of C.E.C. We overrule appellant's sixth issue.

### III. CONSTITUTIONAL CHALLENGE TO SECTION 106.001(1)(O)

We next consider appellant's fifth issue, in which he contends section 161.001(1)(O) is unconstitutional as applied to him because he, as a resident of Louisiana, was required to pay for services outlined in the FSP, even though he was not responsible for any abuse or neglect of the children.[7] The crux of appellant's argument is that his due process and equal protection rights were violated because the Department provided services to indigent parents living in Texas but not to him.

As the party challenging the constitutionality of a statute as applied, appellant had the burden of proving all facts necessary to establish that the statute is unconstitutional as applied to him. *See Teel v. Shifflett*, 309 S.W.3d 597, 601 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *see also Tex-Air Helicopters, Inc. v. Galveston Cnty. Appraisal Review Bd.*, 76 S.W.3d 575, 584–85 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("Courts apply a presumption of constitutionality to statutes; therefore, the party alleging the statute is unconstitutional has the burden of proof.").

The caseworker and her supervisor testified that the Department does not have a burden to provide services to an out-of-state parent.[8] However, when discussing the fact

---

[6] We recognize that the caseworker testified the children told her they had seen appellant on different occasions when they lived with their mother. However, the evidence supports a finding that appellant had not visited the children since they were taken into the Department's custody over five years ago.

[7] Appellant agrees that section 161.001(1)(O) is facially constitutional.

[8] Contrary to appellant's position, this testimony does not necessarily support a finding that the Department paid for services for Texas parents but not out-of-state parents. Instead, testimony from the caseworker that the Department does not "offer services in Louisiana" does not foreclose the possibility

11

that appellant told the Department he would complete the required services in Louisiana, the caseworker testified, "There are parenting classes, there are psychologicals, there are assessments that can be offered free of charge in all states." Appellant did not present any evidence contradicting this testimony or proving he was unaware free services were offered in Louisiana. Additionally, no evidence supports a finding that appellant ever asked the Department for assistance locating and completing services or informed the Department he was unable to pay for services out of his own pocket or borrow funds from family or friends. Accordingly, appellant has not established that his parental rights were terminated pursuant to section 161.001(1)(O) because he failed to complete services which he could not afford.[9] We hold appellant did not satisfy his burden to prove section 161.001(1)(O) was unconstitutional as applied to him. Issue five is overruled.

## IV. ADMISSION OF EVIDENCE

In his second issue, appellant contends the trial court erred by admitting DNA testing reports regarding his paternity relative to C.E.C. and C.M.C. We review a trial court's decision to admit evidence for an abuse of discretion. *See In re J.F.C.*, 96 S.W.3d at 285.

As an initial matter, we reiterate that it was unnecessary for the trial court to finally adjudicate appellant's paternity regarding C.E.C. before appellant's rights as the alleged father of C.E.C. could be terminated under section 161.001. *See* Tex. Fam. Code Ann. § 161.002(a); *In re C.M.C.*, 273 S.W.3d at 882; *Phillips*, 25 S.W.3d at 357. Our decision to affirm the trial court's termination of appellant's alleged parental rights relative to C.E.C. is unaffected even if we conclude the paternity reports were erroneously admitted and no evidence supports a finding that appellant is C.E.C.'s

---

that the Department would provide services if the out-of-state parents came to Texas.

[9] We recognize appellant's indigency would have prevented him from performing certain services such as providing financial support for his children. However, this fact does not mean section 161.001(1)(O) was unconstitutionally applied in the instant case because appellant could have completed other required services at no cost but did not. *See In re C.M.C.*, 273 S.W.3d at 875–76 (explaining section 161.001(1)(O) requires parent complete *all* court-ordered services, not merely some).

12

biological father.  Accordingly, we consider appellant's second issue only as it pertains to C.M.C.

During trial, the Department offered paternity reports from Chromosomal Laboratories, Inc., establishing that appellant is C.E.C.'s father but not C.M.C.'s father. Prior to trial, the Department filed the affidavit of an employee of National Screening Center to establish that the paternity reports were the business records of National Screening Center.  Appellant timely objected to admission of the paternity reports, arguing the reports were not the business records of National Screening Center and, thus, the affidavit did not satisfy the business records exception to the hearsay rule.  *See* Tex. R. Evid. 803(6) (business records exception).  The trial court overruled the objection and admitted the reports.

Thereafter, the following exchanges occurred during the Department's direct-examination of the caseworker without any objection by appellant:

> [Counsel for the Department:]  And one of the children, I think her name is [C.M.C.], when we determined that she was not connected to him by DNA, she was adopted; is that correct?
>
> [Caseworker:]  Yes.  That's correct.
>
> . . .
>
> [Counsel for the Department:]  And are you asking this Court to terminate the rights of [appellant] as to [C.E.C.] . . . [?]
>
> [Caseworker:]  That's correct.
>
> [Counsel for the Department:]  And to terminate the rights or to recognize the fact that [C.M.C.] is not his child because DNA establishes that there's no parental relationship between him and that child?
>
> [Caseworker:]  That's correct.

Generally, error in the admission of evidence is deemed harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection.  *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) (citing *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex. 1984)); *In re E.A.K.*, 192

13

S.W.3d 133, 148 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). During these exchanges, the caseworker relayed the information contained in the paternity reports, *i.e.*, DNA testing established appellant is not the biological father of C.M.C. Accordingly, assuming without deciding that the reports were erroneously admitted, we hold any such error was deemed harmless by the caseworker's testimony. We overrule appellant's second issue.

## V. CONSERVATORSHIP

Finally, we address appellant's conservatorship-related issues. In his third issue, appellant contends he should be appointed as C.E.C.'s managing conservator. However, appellant is not entitled to be appointed conservator because we affirm the trial court's termination of appellant's parental rights regarding C.E.C. Appellant's third issue is overruled.

In his fourth issue, appellant contends the trial court erred by failing to appoint a managing conservator for C.M.C. Appellant argues the adoption of C.M.C. by the foster family was void because it occurred before the trial court determined appellant is not C.M.C.'s father. Hence, appellant requests us to reform the judgment to name the Department as C.M.C.'s managing conservator. We find it troublesome that the foster family was permitted to adopt C.M.C. before adjudication of appellant's parental rights. Nevertheless, appellant has been adjudicated a non-parent and has not established any standing to request that the Department be named the child's managing conservator. Appellant's fourth issue is overruled.

We affirm the trial court's judgment.


/s/ Charles W. Seymore
Justice


Panel consists of Chief Justice Hedges and Justices Seymore and Brown.