COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-288-CV

 

 

IN THE INTEREST OF B.P.W., A CHILD                                                    

                                                                                                        

 

                                              ------------

 

            FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Phillip Brandon W. appeals
the trial court=s order
terminating his parental rights in his child, B.P.W.  In four points, Phillip challenges the legal
and factual sufficiency of the evidence to support the grounds for
termination.  We affirm.

The case was tried to the
court.  As grounds for termination, the
trial court found that Phillip

$engaged
in conduct or knowingly placed B.P.W. with persons who engaged in conduct that
endangered the child=s
emotional well-being;

 








$knowingly
engaged in criminal conduct that had resulted in Phillip=s conviction of an offense and confinement or imprisonment and
inability to care for the child for not less than two years from the date of
filing the petition for termination.[2]  

In his third and fourth
points, Phillip contends that the evidence is legally and factually insufficient
to support the first of these grounds.








AEndanger@ means to expose to loss or injury or to jeopardize.[3]  The parent must have engaged in a voluntary,
deliberate, conscious course of conduct.[4]  It is not, however, necessary that the parent=s conduct be directed at the child or that the child actually suffer
injury.[5]  Generally, conduct that subjects a child to a
life of uncertainty and instability endangers the child=s physical and emotional well‑being.[6]  While imprisonment, alone, is not a
sufficient basis for terminating parental rights,[7]
it is an appropriate factor to consider.[8]  Further, courts may consider parental conduct
that occurred both before and after the child=s birth.[9]

The evidence in this case
shows that Phillip, who was twenty-four at the time of the trial on
termination, had engaged in criminal activity since he was a juvenile and had
prior convictions and incarcerations for burglaries, theft, and marijuana
possession.  In addition, a month before
B.P.W. was born in July 2002, Phillip committed two burglaries.  A few days before B.P.W.=s birth, Phillip committed theft. 
Phillip admitted at trial that he knew when he committed the offenses
that he was risking not being around for B.P.W., but he committed them
anyway.  Phillip was arrested for the
2002 offenses three days after B.P.W. was born, was convicted of all three
offenses, and was incarcerated the entire three years of B.P.W.=s life prior to termination. 
B.P.W.=s only
interaction with his father had been at a correctional facility.  Phillip admitted that it was not in B.P.W.=s best interest to spend those three years without his father or to
continue to be separated until Phillip=s parole.  








Phillip testified that he
would be up for parole in November 2005, but agreed that he could not predict
whether he would be granted parole at that time.[10]  He had been up for parole earlier but was
denied parole and placed on administrative segregation when prison authorities
found him in possession of the constitution and bylaws of the Aryan
Brotherhood.  Phillip testified that the
documents belonged to his bunk mate, but he did not tell prison authorities
that the papers were not his for fear of retaliation by the Brotherhood.  At the time of trial in July 2005, Phillip
was Ain the middle@ of an
eighteen-month AGRAD@[11] investigation that he would have to complete to get out of
administrative segregation. 

For the first two years while
Phillip was in prison, B.P.W. was in the custody of his mother, Michelle
W.  During that time, Michelle committed
several offenses, including child abandonment of B.P.W. and identity theft
against Phillip=s
mother.  Consequently, Michelle, too, was
incarcerated at the time of the termination proceeding.  Phillip had married Michelle while he was in
prison, but testified that he did not plan to continue the marriage after his
release.  Nonetheless, Phillip continued
to maintain contact with Michelle, despite knowing that she had abandoned
B.P.W. 








Phillip admitted that he
could not care for B.P.W. while in prison, but testified that he had arranged
to provide for B.P.W.=s housing
needs through a trust fund set up by his father.  Phillip did not, however, know how much money
was in the fund.  Further, Phillip
testified that his family would care for B.P.W. after Michelle=s abandonment, but conceded that he did not have a definite plan and
could not name a specific care giver. 
Stephen W., Phillip=s brother, testified that Phillip was not a stable person, did not
have a stable lifestyle, and had never been able to care for himself.  Stephen testified that no one in the family
was able to provide care for B.P.W.  

Further, at the time of the
trial on termination, B.P.W. had been in the Department=s custody for about a year and with the same foster motherCwho had expressed a desire to adopt himCfor ten months.  Phillip did not
know that B.P.W. had been primarily with one foster mother.  








Having carefully reviewed the
evidence, we hold that the trial court could have formed a firm belief or
conviction that Phillip had engaged in conduct that endangered B.P.W.=s emotional well-being.[12]  Phillip had engaged in a continuing course of
crime that spanned from several years until just days before B.P.W.=s birth, even though Phillip knew his conduct could result in his
incarceration and separation from B.P.W. 
While in prison, Phillip had become associated with the Aryan
Brotherhood, which jeopardized his chances for an early parole.[13]  Phillip also married B.P.W.=s mother and continued to stay in contact with her, even though he
knew she had abandoned B.P.W.  Further,
Phillip did not know that B.P.W. had had the same foster mother for most of
year before trial, evidencing a lack of interest in, or contact with, the
Department and B.P.W. during that time.








It can negatively impact a
child=s emotional well-being when parents repeatedly commit criminal acts
that subject them to incarceration, resulting in them being absent from the
child=s life and unable to provide support.[14]  Further, because B.P.W.=s mother was also absent, Phillip=s criminal conduct and his participation in gang activity while in
prison that hindered his chances for early parole led to B.P.W. not knowing
either of his biological parents and subjected B.P.W. to ongoing uncertainty
regarding who would care for him.  A fact
finder could reasonably conclude from this evidence that Phillip=s actions created an emotional vacuum in B.P.W.=s life.[15]  Therefore, we hold that the evidence is
legally and factually sufficient to support the trial court=s finding regarding the first ground for termination.  We overrule Phillip=s third and fourth points[16]
and affirm the trial court=s termination order.

 

PER CURIAM

PANEL F:    CAYCE,
C.J.; WALKER and MCCOY, JJ.

DELIVERED: 
AUGUST 31, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Fam. Code Ann. '
161.001(1)(E), (Q) (Vernon Supp. 2006).





[3]Tex.
Dep=t of
Human Servs. v. Boyd, 727 S.W.2d 531, 533-34 (Tex. 1987).





[4]In re
R.W., 129 S.W.3d 732, 738 (Tex. App.CFort Worth 2004, pet. denied).





[5]Boyd, 727
S.W.2d at 533-34; R.W., 129 S.W.3d at 738.





[6]R.W., 129
S.W.3d at 739.





[7]In re
D.T., 34 S.W.3d 625, 636 (Tex. App.CFort Worth 2000, pet.
denied).





[8]In re
S.M.L., 171 S.W.3d 472, 478-79 (Tex. App.CHouston [14th Dist.] 2005, no
pet.).





[9]R.W., 129
S.W.3d at 738.





[10]Phillip
was sentenced to five years in prison for the two burglary offenses.  His minimum projected release date was
November 2, 2004, which had passed by the time of trial, and his maximum
release date was July 12, 2007.  





[11]AGRAD@
stands for gang renouncement and declassification.  





[12]See In
re J.F.C., 96 S.W.3d 256, 265-66 (Tex. 2002) (setting out legal and factual
sufficiency standards of review applicable to termination cases); In re
C.H., 89 S.W.3d 17, 25 (Tex. 2002).





[13]Although
there is conflicting evidence regarding whether Phillip was associated with the
Brotherhood, the trial court was free to believe the evidence that he was.  See McGalliard v. Kuhlmann, 722 S.W.2d
694, 697 (Tex. 1986).





[14]S.M.L., 171
S.W.3d at 478-79.





[15]See
In re U.P., 105 S.W.3d 222, 236 (Tex. App.CHouston
[14th Dist.] 2003, pet. denied).





[16]In
light of our disposition regarding these points, we need not consider Phillip=s first
two points, which challenge the legal and factual sufficiency of the evidence
to support the second ground for termination. 
See Tex. Fam. Code Ann.
'
161.001(1); Tex. R. App. P. 47.1.