IN RE B.P.W.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-288-CV

IN THE INTEREST OF B.P.W., A CHILD 

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Phillip Brandon W. appeals the trial court’s order terminating his parental rights in his child, B.P.W.  In four points, Phillip challenges the legal and factual sufficiency of the evidence to support the grounds for termination.  We affirm.

The case was tried to the court.  As grounds for termination, the trial court found that Phillip

•engaged in conduct or knowingly placed B.P.W. with persons who engaged in conduct that endangered the child’s emotional well-being;

•knowingly engaged in criminal conduct that had resulted in Phillip’s conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition for termination.
(footnote: 2)  

In his third and fourth points, Phillip contends that the evidence is legally and factually insufficient to support the first of these grounds.

“Endanger” means to expose to loss or injury or to jeopardize.
(footnote: 3)  The parent must have engaged in a voluntary, deliberate, conscious course of conduct.
(footnote: 4)  It is not, however, necessary that the parent’s conduct be directed at the child or that the child actually suffer injury.
(footnote: 5)  Generally, conduct that subjects a child to a life of uncertainty and instability endangers the child’s physical and emotional well-being.
(footnote: 6)  While imprisonment, alone, is not a sufficient basis for terminating parental rights,
(footnote: 7) it is an appropriate factor to consider.
(footnote: 8)  Further, courts may consider parental conduct that occurred both before and after the child’s birth.
(footnote: 9)
 The evidence in this case shows that Phillip, who was twenty-four at the time of the trial on termination, had engaged in criminal activity since he was a juvenile and had prior convictions and incarcerations for burglaries, theft, and marijuana possession.  In addition, a month before B.P.W. was born in July 2002, Phillip committed two burglaries.  A few days before B.P.W.’s birth, Phillip committed theft.  Phillip admitted at trial that he knew when he committed the offenses that he was risking not being around for B.P.W., but he committed them anyway.  Phillip was arrested for the 2002 offenses three days after B.P.W. was born, was convicted of all three offenses, and was incarcerated the entire three years of B.P.W.’s life prior to termination.  B.P.W.’s only interaction with his father had been at a correctional facility.  Phillip admitted that it was not in B.P.W.’s best interest to spend those three years without his father or to continue to be separated until Phillip’s parole.  

Phillip testified that he would be up for parole in November 2005, but agreed that he could not predict whether he would be granted parole at that time.
(footnote: 10)  He had been up for parole earlier but was denied parole and placed on administrative segregation when prison authorities found him in possession of the constitution and bylaws of the Aryan Brotherhood.  Phillip testified that the documents belonged to his bunk mate, but he did not tell prison authorities that the papers were not his for fear of retaliation by the Brotherhood.  At the time of trial in July 2005, Phillip was “in the middle” of an eighteen-month “GRAD”
(footnote: 11) investigation that he would have to complete to get out of administrative segregation. 

For the first two years while Phillip was in prison, B.P.W. was in the custody of his mother, Michelle W.  During that time, Michelle committed several offenses, including child abandonment of B.P.W. and identity theft against Phillip’s mother.  Consequently, Michelle, too, was incarcerated at the time of the termination proceeding.  Phillip had married Michelle while he was in prison, but testified that he did not plan to continue the marriage after his release.  Nonetheless, Phillip continued to maintain contact with Michelle, despite knowing that she had abandoned B.P.W. 

Phillip admitted that he could not care for B.P.W. while in prison, but testified that he had arranged to provide for B.P.W.’s housing needs through a trust fund set up by his father.  Phillip did not, however, know how much money was in the fund.  Further, Phillip testified that his family would care for B.P.W. after Michelle’s abandonment, but conceded that he did not have a definite plan and could not name a specific care giver.  Stephen W., Phillip’s brother, testified that Phillip was not a stable person, did not have a stable lifestyle, and had never been able to care for himself.  Stephen testified that no one in the family was able to provide care for B.P.W.  

Further, at the time of the trial on termination, B.P.W. had been in the Department’s custody for about a year and with the same foster mother—who had expressed a desire to adopt him—for ten months.  Phillip did not know that B.P.W. had been primarily with one foster mother.  

Having carefully reviewed the evidence, we hold that the trial court could have formed a firm belief or conviction that Phillip had engaged in conduct that endangered B.P.W.’s emotional well-being.
(footnote: 12)  Phillip had engaged in a continuing course of crime that spanned from several years until just days before B.P.W.’s birth, even though Phillip knew his conduct could result in his incarceration and separation from B.P.W.  While in prison, Phillip had become associated with the Aryan Brotherhood, which jeopardized his chances for an early parole.
(footnote: 13)  Phillip also married B.P.W.’s mother and continued to stay in contact with her, even though he knew she had abandoned B.P.W.  Further, Phillip did not know that B.P.W. had had the same foster mother for most of year before trial, evidencing a lack of interest in, or contact with, the Department and B.P.W. during that time.

It can negatively impact a child’s emotional well-being when parents repeatedly commit criminal acts that subject them to incarceration, resulting in them being absent from the child’s life and unable to provide support.
(footnote: 14)  Further, because B.P.W.’s mother was also absent, Phillip’s criminal conduct and his participation in gang activity while in prison that hindered his chances for early parole led to B.P.W. not knowing either of his biological parents and subjected B.P.W. to ongoing uncertainty regarding who would care for him.  A fact finder could reasonably conclude from this evidence that Phillip’s actions created an emotional vacuum in B.P.W.’s life.
(footnote: 15)  Therefore, we hold that the evidence is legally and factually sufficient to support the trial court’s finding regarding the first ground for termination.  We overrule Phillip’s third and fourth points
(footnote: 16) and affirm the trial court’s termination order.

PER CURIAM

PANEL F: CAYCE, C.J.; WALKER and MCCOY, JJ.

DELIVERED:  AUGUST 31, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See
 
Tex. Fam. Code Ann.
 § 161.001(1)(E), (Q) (Vernon Supp. 2006).

3:
Tex. Dep’t of Human Servs. v. Boyd,
 727 S.W.2d 531, 533-34 (Tex. 1987).

4:
In re R.W.,
 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).

5:
Boyd,
 727 S.W.2d at 533-34; 
R.W.,
 129 S.W.3d at 738.

6:
R.W.,
 129 S.W.3d at 739.

7:
In re D.T.,
 34 S.W.3d 625, 636 (Tex. App.—Fort Worth 2000, pet. denied).

8:
In re S.M.L.,
 171 S.W.3d 472, 478-79 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

9:
R.W.,
 129 S.W.3d at 738.

10:
Phillip was sentenced to five years in prison for the two burglary offenses.  His minimum projected release date was November 2, 2004, which had passed by the time of trial, and his maximum release date was July 12, 2007.  

11:
“GRAD” stands for gang renouncement and declassification.  

12:
See
 
In re J.F.C.,
 96 S.W.3d 256, 265-66 (Tex. 2002) (setting out legal and factual sufficiency standards of review applicable to termination cases);
 In re C.H.,
 89 S.W.3d 17, 25 (Tex. 2002).

13:
Although there is conflicting evidence regarding whether Phillip was associated with the Brotherhood, the trial court was free to believe the evidence that he was.  
See McGalliard v. Kuhlmann,
 722 S.W.2d 694, 697 (Tex. 1986).

14:
S.M.L.,
 171 S.W.3d at 478-79.

15:
See In re U.P.,
 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

16:
In light of our disposition regarding these points, we need not consider Phillip’s first two points, which challenge the legal and factual sufficiency of the evidence to support the second ground for termination.  
See
 
Tex. Fam. Code Ann.
 § 161.001(1); 
Tex. R. App. P.
 47.1.