

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-126-CV

IN THE INTEREST OF C.L., A CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant James L. appeals the trial court's termination of his parental rights to C.L., his daughter. We affirm.

## I. Background

C.L. is the daughter of appellant James L. and Mary M. C.L. was born on October 24, 2000. She was eight years old at the time of trial. James and Mary are married, but they have been separated since March 2003. C.L. had

---

[1] See Tex. R. App. P. 47.4.

been living with Mary since James began a five-year prison sentence in March 2003 for aggravated sexual assault of a child, who was his niece.

The Department of Family and Protective Services (the Department) filed this suit seeking termination of Mary's and James's parental rights to C.L. Before trial, Mary voluntarily relinquished her parental rights.

The Department introduced evidence of James's knowledge that Mary had been intoxicated while attempting to care for C.L. and that C.L. had lived with a half-brother who was an alleged sex offender. James testified that, after his release from prison in January 2008, he did not attempt reunification with C.L. until after this suit was filed.

Following a bench trial, the trial court terminated James's parental rights under Texas Family Code section 161.001, based on the following findings:

- James had knowingly placed or knowingly allowed C.L. to remain in conditions or surroundings that endangered her physical or emotional well-being;

- James had engaged in conduct or knowingly placed C.L. with persons who engaged in conduct that endangered her physical or emotional well-being; and

- termination was in C.L.'s best interest.[2]

This appeal followed.

---

[2] *... See* Tex. Fam. Code Ann. § 161.001(1)(D),(E), (2) (Vernon 2008).

## II. Sufficiency of the Evidence Supporting Termination of James's Parental Rights

James challenges the legal and factual sufficiency of the evidence to support the trial court's findings that he had knowingly placed, or knowingly allowed C.L. to remain, in conditions or surroundings that endangered her physical or emotional well-being,[3] and that he had engaged in conduct, or knowingly placed C.L. with persons who engaged in conduct, that endangered her physical or emotional well-being.[4]

In proceedings to terminate the parent-child relationship brought under Texas Family Code section 161.001, the petitioner must establish by clear and convincing evidence one ground listed under section 161.001(1) and must prove that termination is in the best interest of the child.[5]

### A. Standards of Review

Because of the elevated status of parental rights, the quantum of proof in a termination proceeding is elevated from the preponderance of the evidence

---

[3] *See id.* § 161.001(1)(D).

[4] *See id.* § 161.001(1)(E).

[5] *Id.* § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). James does not challenge the trial court's finding that termination of his parental rights is in C.L.'s best interest.

to clear and convincing evidence.[6] "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.[7] This higher burden of proof alters the appellate standard for both legal and factual sufficiency reviews.[8] In termination cases, therefore, both standards must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the petitioner bears the burden of proof.[9]

In reviewing the evidence for legal sufficiency in parental termination cases, we must review all of the evidence in the light most favorable to the finding to determine whether a trier of fact reasonably could have formed a firm belief or conviction that the grounds for termination were established.[10] This means that we must assume that the factfinder resolved any disputed facts in

---

[6] *See Santosky v. Kramer*, 455 U.S. 745, 758–69, 102 S. Ct. 1388, 1397–1403 (1982); *see also* Tex. Fam. Code Ann. § 161.001.

[7] *See* Tex. Fam. Code Ann. § 101.007 (Vernon 2008).

[8] *See In re J.F.C.*, 96 S.W.3d 256, 265 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re J.T.G.*, 121 S.W.3d 117, 124 (Tex. App.—Fort Worth 2003, no pet.).

[9] *See J.F.C.*, 96 S.W.3d at 265–66; *C.H.*, 89 S.W.3d at 25; *J.T.G.*, 121 S.W.3d at 124.

[10] *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

favor of its finding if a reasonable factfinder could have done so.[11] We must also disregard all evidence that a reasonable factfinder could have disbelieved.[12] We must consider, however, undisputed evidence even if it is contrary to the finding.[13] That is, we must consider evidence favorable to termination if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not.[14]

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own.[15] We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the grounds for termination were established.[16] If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient.[17]

---

[11] ... *Id.*

[12] ... *Id.*

[13] ... *Id.*

[14] ... *Id.*

[15] ... *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

[16] ... *C.H.*, 89 S.W.3d at 28.

[17] ... *H.R.M.*, 209 S.W.3d at 108.

B.    Evidence Supporting Terminating James's Parental Rights Based on Family Code Section 161.001(1)(D)

Under subsection D of section 161.001(1), we examine the evidence to determine whether the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child."[18]  Endangerment is defined as exposing to loss or injury, or to jeopardize.[19]  Under subsection D, it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being.[20]

To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, nor is the child required to suffer injury.[21]  Rather, a child is endangered when the environment or the course of conduct of one of the parents creates a potential for danger that the parent is

---

[18] Tex. Fam. Code Ann. § 161.001(1)(D); *see J.T.G.*, 121 S.W.3d at 125; *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied).

[19] *J.T.G.*, 121 S.W.3d at 125.

[20] *D.T.*, 34 S.W.3d at 632.

[21] *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

aware of but disregards.[22]   Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in the home is a part of the "conditions or surroundings" of the child's home under section 161.001(1)(D).[23] For example, a parent's drug use may support an endangerment finding.[24]   Additionally, a parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient.[25]

The record shows that various evidence was presented on the issue of whether James knowingly placed or allowed C.L. to remain in conditions or surroundings that endangered her physical or emotional well-being.   James testified at trial that, after C.L. was born, he and Mary each often drank alcohol to the point of intoxication, including drinking in their home while caring for C.L. James conceded that these episodes of parental intoxication endangered C.L.'s

---

[22] *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no writ).

[23] *In re J.L.W.*, No. 02-08-00179-CV, 2008 WL 4937970, at *6 (Tex. App.—Fort Worth Nov. 20, 2008, no pet.) (mem. op.); *see also In re W.S.*, 899 S.W.2d at 776 (stating that "environment" refers not only to the acceptability of living conditions, but also to the parent's conduct in the home).

[24] *J.T.G.*, 121 S.W.3d at 125.

[25] *See S.M.L.*, 171 S.W.3d at 477.

well-being, and he admitted that his personal decision to become intoxicated while C.L. was in his care was a "bad choice."

In 1995, James was placed on seven years' deferred adjudication probation for aggravated sexual assault of a child. The victim was his then twelve-year-old niece. While on probation, James attended but failed to complete a sex offender treatment course. Because he failed to comply with the terms of his probation, in March 2003, the trial court adjudicated his guilt, revoked his community supervision, and sentenced him to five years' imprisonment.

When James was released from prison in January 2008, C.L. was in Mary's care. C.L. also lived with a half-brother whom James knew to be an alleged sex offender. James also testified that he knew that Mary had a history of drinking alcohol while C.L. was in her care, to the point where James conceded that Mary's actions "placed [C.L.'s] emotional or physical well-being in danger," and that he knew that Mary allegedly had been driving while intoxicated with her children in the vehicle. James also testified that he did not seek reunification with C.L. until after being served with the original petition for termination in this lawsuit.

In June 2008, the Department initiated an investigation when Mary indicated that she did not wish to have C.L.'s older brother released from

juvenile detention. One week before this case was filed, Mary attended a supervised visit of her grandchild. During the visit, the individual with whom the grandchild was placed, Bobbie Jones, witnessed Mary drinking two cans of beer while holding the grandchild. One week later, but still before this case was filed, Jones and two others reported that Mary arrived at another visitation of the same grandchild while intoxicated. When Mary left the visitation, and despite pleas not to drink and drive, Jones and two other individuals witnessed Mary driving herself and her children, including C.L., home while intoxicated.

During the pendency of this litigation, James did not complete the service plan the Department prepared for his reunification with C.L. The service plan required James to complete a psychological evaluation, parenting classes, sex offender group therapy, and individual counseling. James completed only the psychological counseling and parenting classes at the time of trial. In fact, James testified at trial that, since 1995, he has not completed any sex offender therapy courses ordered during his probation, offered in prison, or recommended during the pendency of this litigation. James testified that he did not have enough money to pay for the sex offender group therapy program that was required under his service plan and that the cost for the program was at least $700.00. The record includes evidence, however, that James purchased

approximately $750.00 worth of presents for C.L. after he was released from prison.

Because of his imprisonment, his failure to seek reunification with C.L. after his release from prison in January 2008, and his failure to complete his reunification service plan following initiation of this lawsuit, James has not been actively involved with C.L. since at least the beginning of his prison sentence on March 11, 2003.

Mary testified at trial that she had never left C.L. unsupervised with James during the two years of C.L.'s life before he was imprisoned. Mary stated that she did not trust James alone with C.L. in light of his criminal record: "I don't trust him with any female child, to tell you the truth . . . . I'm not going to put my child in any risk of that happening to her."

Mary's pattern of alcohol abuse and its effect on her life and ability to parent established an endangering course of conduct.[26] James testified that he knew of Mary's alcohol abuse and knew that Mary had a history of attempting to care for C.L. while intoxicated. James knew that Mary's behavior presented more than a theoretical harm to C.L.'s well-being; he testified that he knew that Mary's consumption of alcohol while caring for C.L. placed C.L.'s emotional or

---

[26] *See In re U.P.*, 105 S.W.3d 222, 234 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

10

physical well-being in danger. James also knew that C.L.'s conditions or surroundings included living in a home with a half-brother who was an alleged juvenile sex offender.

Upon his release from prison, James knew of C.L.'s endangerment, but he made no attempt to reunify with C.L. or remove her from her endangering conditions and surroundings for approximately five months, and even then his attempts to reunify coincided with the filing of this lawsuit.

Having carefully considered the evidence, we hold that the evidence is legally and factually sufficient to support the trial court's endangerment finding under subsection D of family code section 161.001(1).

### III.    Conclusion

We affirm the judgment of the trial court.[27]

PER CURIAM

PANEL:  CAYCE, C.J.; MCCOY and MEIER, JJ.

DELIVERED:  September 24, 2009

---

[27] *See S.M.L.*, 171 S.W.3d at 477; *W.S.*, 899 S.W.2d at 776. Because the finding under section 161.001(1)(D) is sufficient to support a judgment of termination, we need not address James's issues regarding the trial court's findings under section 161.001(1)(E). *See* Tex. R. App. P. 47.1; *In re K.A.S.*, 131 S.W.3d 215, 225 (Tex. App.—Fort Worth 2004, pet. denied).