COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-126-CV

 

 

IN THE
INTEREST OF C.L., A CHILD

 

 

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant James L. appeals the trial court=s
termination of his parental rights to C.L., his daughter.  We affirm.

                                         I.     Background








C.L. is the daughter of appellant James L. and
Mary M.  C.L. was born on October 24,
2000.  She was eight years old at the
time of trial.  James and Mary are
married, but they have been separated since March 2003.  C.L. had been living with Mary since James
began a five-year prison sentence in March 2003 for aggravated sexual assault
of a child, who was his niece.

The Department of Family and Protective Services
(the Department) filed this suit seeking termination of Mary=s and
James=s
parental rights to C.L.  Before trial,
Mary voluntarily relinquished her parental rights.

The Department introduced evidence of James=s
knowledge that Mary had been intoxicated while attempting to care for C.L. and
that C.L. had lived with a half-brother who was an alleged sex offender.  James testified that, after his release from
prison in January 2008, he did not attempt reunification with C.L. until after
this suit was filed.

Following a bench trial, the trial court
terminated James=s parental rights under Texas
Family Code section 161.001, based on the following findings:

$                  
James had knowingly placed or knowingly allowed C.L. to remain in
conditions or surroundings that endangered her physical or emotional
well-being;

 

$                  
James had engaged in conduct or knowingly placed C.L. with persons who
engaged in conduct that endangered her physical or emotional well-being; and 

 

$                  
termination was in C.L.=s best interest.[2]

 

This appeal followed.








            II.     Sufficiency of the Evidence Supporting
Termination of

                                    James=s
Parental Rights

James challenges the legal and
factual sufficiency of the evidence to support the trial court=s
findings that he had knowingly placed, or knowingly allowed C.L. to remain, in
conditions or surroundings that endangered her physical or emotional
well-being,[3]
and that he had engaged in conduct, or knowingly placed C.L. with persons who
engaged in conduct, that endangered her physical or emotional well-being.[4]

In proceedings to terminate the parent‑child
relationship brought under Texas Family Code section 161.001, the petitioner
must establish by clear and convincing evidence one ground listed under section
161.001(1) and must prove that termination is in the best interest of the
child.[5]

A.     Standards of Review








Because of the elevated status
of parental rights, the quantum of proof in a termination proceeding is
elevated from the preponderance of the evidence to clear and convincing
evidence.[6]  AClear
and convincing evidence@ means the measure or degree of
proof that will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be established.[7]  This higher burden of proof alters the
appellate standard for both legal and factual sufficiency reviews.[8]  In termination cases, therefore, both
standards must take into consideration whether the evidence is such that a
factfinder could reasonably form a firm belief or conviction about the truth of
the matter on which the petitioner bears the burden of proof.[9]








In reviewing the evidence for legal sufficiency
in parental termination cases, we must review all of the evidence in the light
most favorable to the finding to determine whether a trier of fact reasonably
could have formed a firm belief or conviction that the grounds for termination
were established.[10]  This means that we must assume that the
factfinder resolved any disputed facts in favor of its finding if a reasonable
factfinder could have done so.[11]  We must also disregard all evidence that a
reasonable factfinder could have disbelieved.[12]  We must consider, however, undisputed
evidence even if it is contrary to the finding.[13]  That is, we must consider evidence favorable
to termination if a reasonable factfinder could, and disregard contrary
evidence unless a reasonable factfinder could not.[14]


In reviewing the evidence for factual
sufficiency, we must give due deference to the factfinder=s
findings and not supplant the judgment with our own.[15]  We must determine whether, on the entire
record, a factfinder could reasonably form a firm conviction or belief that the
grounds for termination were established.[16]  If, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.[17]








B.     Evidence Supporting Terminating James=s Parental Rights Based
on Family Code Section 161.001(1)(D)

 

Under subsection D of section
161.001(1), we examine the evidence to determine whether the parent Aknowingly
placed or knowingly allowed the child to remain in conditions or surroundings
which endanger the physical or emotional well‑being of the child.@[18]  Endangerment is defined as exposing to loss
or injury, or to jeopardize.[19]  Under subsection D, it is necessary to
examine evidence related to the environment of the child to determine if the
environment was the source of endangerment to the child=s
physical or emotional well‑being.[20]








To support a finding of endangerment, the parent=s
conduct does not necessarily have to be directed at the child, nor is the child
required to suffer injury.[21]  Rather, a child is endangered when the
environment or the course of conduct of one of the parents creates a potential
for danger that the parent is aware of but disregards.[22]  Inappropriate, abusive, or unlawful conduct
by persons who live in the child=s home
or with whom the child is compelled to associate on a regular basis in the home
is a part of the Aconditions or surroundings@ of the
child=s home
under section 161.001(1)(D).[23]  For example, a parent=s drug
use may support an endangerment finding.[24]  Additionally, a parent need not know for
certain that the child is in an endangering environment; awareness of such a
potential is sufficient.[25]








The record shows that various evidence was
presented on the issue of whether James knowingly placed or allowed C.L. to
remain in conditions or surroundings that endangered her physical or emotional
well-being.  James testified at trial
that, after C.L. was born, he and Mary each often drank alcohol to the point of
intoxication, including drinking in their home while caring for C.L.  James conceded that these episodes of
parental intoxication endangered C.L.=s
well-being, and he admitted that his personal decision to become intoxicated
while C.L. was in his care was a Abad
choice.@

In 1995, James was placed on seven years=
deferred adjudication probation for aggravated sexual assault of a child.  The victim was his then twelve-year-old
niece.  While on probation, James
attended but failed to complete a sex offender treatment course.  Because he failed to comply with the terms of
his probation, in March 2003, the trial court adjudicated his guilt, revoked
his community supervision, and sentenced him to five years=
imprisonment.

When James was released from prison in January
2008, C.L. was in Mary=s care.  C.L. also lived with a half-brother whom
James knew to be an alleged sex offender. 
James also testified that he knew that Mary had a history of drinking
alcohol while C.L. was in her care, to the point where James conceded that Mary=s
actions Aplaced
[C.L.=s]
emotional or physical well-being in danger,@ and
that he knew that Mary allegedly had been driving while intoxicated with her
children in the vehicle.  James also
testified that he did not seek reunification with C.L. until after being served
with the original petition for termination in this lawsuit.








In June 2008, the Department initiated an
investigation when Mary indicated that she did not wish to have C.L.=s older
brother released from juvenile detention. 
One week before this case was filed, Mary attended a supervised visit of
her grandchild.  During the visit, the
individual with whom the grandchild was placed, Bobbie Jones, witnessed Mary
drinking two cans of beer while holding the grandchild.  One week later, but still before this case
was filed, Jones and two others reported that Mary arrived at another
visitation of the same grandchild while intoxicated.  When Mary left the visitation, and despite
pleas not to drink and drive, Jones and two other individuals witnessed Mary
driving herself and her children, including C.L., home while intoxicated.








During the pendency of this litigation, James did
not complete the service plan the Department prepared for his reunification
with C.L.  The service plan required
James to complete a psychological evaluation, parenting classes, sex offender
group therapy, and individual counseling. 
James completed only the psychological counseling and parenting classes
at the time of trial.  In fact, James
testified at trial that, since 1995, he has not completed any sex offender
therapy courses ordered during his probation, offered in prison, or recommended
during the pendency of this litigation. 
James testified that he did not have enough money to pay for the sex
offender group therapy program that was required under his service plan and
that the cost for the program was at least $700.00.  The record includes evidence, however, that
James purchased approximately $750.00 worth of presents for C.L. after he was
released from prison.

Because of his imprisonment, his failure to seek
reunification with C.L. after his release from prison in January 2008, and his
failure to complete his reunification service plan following initiation of this
lawsuit, James has not been actively involved with C.L. since at least the
beginning of his prison sentence on March 11, 2003.

Mary testified at trial that she had never left
C.L. unsupervised with James during the two years of C.L.=s life
before he was imprisoned.  Mary stated
that she did not trust James alone with C.L. in light of his criminal
record:  AI don=t trust
him with any female child, to tell you the truth . . . .  I=m not
going to put my child in any risk of that happening to her.@








Mary=s
pattern of alcohol abuse and its effect on her life and ability to parent
established an endangering course of conduct.[26]  James testified that he knew of Mary=s
alcohol abuse and knew that Mary had a history of attempting to care for C.L.
while intoxicated.  James knew that Mary=s
behavior presented more than a theoretical harm to C.L.=s
well-being; he testified that he knew that Mary=s
consumption of alcohol while caring for C.L. placed C.L.=s
emotional or physical well-being in danger. 
James also knew that C.L.=s
conditions or surroundings included living in a home with a half-brother who
was an alleged juvenile sex offender.

Upon his release from prison, James knew of C.L.=s
endangerment, but he made no attempt to reunify with C.L. or remove her from
her endangering conditions and surroundings for approximately five months, and
even then his attempts to reunify coincided with the filing of this lawsuit.

Having carefully considered the evidence, we hold
that the evidence is legally and factually sufficient to support the trial
court=s
endangerment finding under subsection D of family code section 161.001(1).

                                         III.    Conclusion

We affirm the judgment of the trial court.[27]

 

PER CURIAM

PANEL:  CAYCE, C.J.; MCCOY and
MEIER, JJ.

DELIVERED:  September 24, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Fam. Code Ann. ' 161.001(1)(D),(E), (2)
(Vernon 2008).





[3]See id. ' 161.001(1)(D).





[4]See id. ' 161.001(1)(E).





[5]Id. ' 161.001; In re J.L.,
163 S.W.3d 79, 84 (Tex. 2005).  James
does not challenge the trial court=s finding that termination of his parental rights
is in C.L.=s best interest.





[6]Santosky v. Kramer, 455 U.S. 745, 758B69, 102 S. Ct. 1388, 1397B1403 (1982); see also
Tex. Fam. Code Ann. ' 161.001.





[7]Tex. Fam. Code Ann. ' 101.007 (Vernon 2008).





[8]In re J.F.C., 96 S.W.3d 256, 265
(Tex. 2002); In re C.H., 89 S.W.3d 17, 25 (Tex. 2002); In re J.T.G.,
121 S.W.3d 117, 124 (Tex. App.CFort Worth 2003, no pet.).





[9]J.F.C., 96 S.W.3d at 265B66; C.H., 89
S.W.3d at 25; J.T.G., 121 S.W.3d at 124.





[10]In re J.P.B., 180 S.W.3d 570, 573
(Tex. 2005).





[11]Id.





[12]Id.





[13]Id.





[14]Id.





[15]In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).





[16]C.H., 89 S.W.3d at 28.





[17]H.R.M., 209 S.W.3d at 108.





[18]Tex. Fam. Code Ann. ' 161.001(1)(D); see
J.T.G., 121 S.W.3d at 125; In re D.T., 34 S.W.3d 625, 632 (Tex. App.CFort Worth 2000, pet.
denied).





[19]J.T.G., 121 S.W.3d at 125.





[20]D.T., 34 S.W.3d at 632.





[21]Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d 531, 533
(Tex. 1987).





[22]In re S.M.L., 171 S.W.3d 472, 477
(Tex. App.CHouston [14th Dist.]
2005, no pet.); see In re W.S., 899 S.W.2d 772, 776 (Tex. App.CFort Worth 1995, no
writ).





[23]In re J.L.W., No. 02‑08‑00179‑CV,
2008 WL 4937970, at *6 (Tex. App.CFort Worth Nov. 20, 2008, no pet.) (mem. op.); see
also In re W.S., 899 S.W.2d at 776 (stating that Aenvironment@ refers not only to the
acceptability of living conditions, but also to the parent=s conduct in the home).





[24]J.T.G., 121 S.W.3d at 125.





[25]See S.M.L., 171 S.W.3d at 477.





[26]See In re U.P., 105 S.W.3d 222, 234
(Tex. App.CHouston [14th Dist.]
2003, pet. denied).





[27]See S.M.L., 171 S.W.3d at 477; W.S.,
899 S.W.2d at 776.  Because the finding
under section 161.001(1)(D) is sufficient to support a judgment of termination,
we need not address James=s issues regarding the
trial court=s findings under section
161.001(1)(E).  See Tex. R. App.
P. 47.1; In re K.A.S., 131 S.W.3d 215, 225 (Tex. App.CFort Worth 2004, pet.
denied).