Affirmed and Memorandum Opinion filed October 27, 2009.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00452-CV

___________________

 

IN THE INTEREST OF A.R.B., C.J.T. AND A.J.

 

 



 



 

On
Appeal from the 300th District Court

Brazoria County,
Texas



Trial Court Cause No. 40812

 



 

 

MEMORANDUM OPINION

            This
is an accelerated appeal from a judgment terminating the parental rights of a
mother as to three young children.  Appellant, the children’s mother,
challenges the factual sufficiency of the evidence to support the jury’s
finding that termination is in the best interest of the children and that
Brazoria County Children’s Protective Service should be appointed as the sole
managing conservator of the children.  We affirm.

Factual and Procedural Background

            In the early
morning hours of October 18, 2006, appellant was bathing when she heard A.R.B.,
her oldest child, screaming.  Roy Jackson, appellant’s boyfriend at the time,
brought A.R.B. into the bathroom to wash a wound on her face.  When he began to
wash A.R.B.’s face, her skin peeled away.  Appellant questioned Jackson about
what happened to A.R.B.’s face and Jackson became angry.  Jackson choked appellant
and hit her so hard she said she lost consciousness.  Appellant testified that
when she awakened after dawn, she and her mother took A.R.B. to the hospital. 
Physicians examined A.R.B. and determined that she suffered second degree burns
to her face.  Appellant told nurses at the hospital that the burns were caused
by spilling boiling water, but the physicians’ assessments were not consistent
with appellant’s explanation.

            After A.R.B. was
taken to the hospital, Victoria Jennings, an investigator with the Texas
Department of Family and Protective Services (“DFPS”), requested that appellant’s
other two children be examined at the Children’s Assessment Center (“CAC”) in
Brazoria County.  The results of the assessments revealed that A.R.B., who was
two years old at the time, in addition to the burn on her face, had 12
different scarring patterns on her body including a looping pattern mark
consistent with physical abuse.  C.J.T., who was one year old at the time, had
several marks and scars consistent with physical abuse, and A.J., who was three
and a half months old at the time, had four broken ribs.  Jennings testified
that the medical records clearly indicated that the children’s injuries were
the result of physical abuse.  

            On November 2,
2006, appellant returned with the children to the Brazoria County CAC.  At that
time, she was confronted with an inconsistency between her story and her
mother’s story about the timing of taking A.R.B. to the hospital.  When
confronted with the inconsistency, appellant became visibly upset, stated that
“no one was going to call her a liar,” and stormed out of the interview room. 
At that time, appellant was given the opportunity to voluntarily place the
children with a family member.  She chose to place the children with her father
and stepmother.  The children were not placed with appellant’s mother and
stepfather because the stepfather had sexually abused appellant in the past.

            On November 17,
2006, Jennings learned that A.J.’s rib fractures were intentionally inflicted
and would have caused severe pain.  Jennings requested that appellant return to
the CAC for another interview and asked her why she did not seek medical
attention for A.J.’s broken ribs.  Appellant responded, “that it was bullshit,”
and told Jennings to “f  - - -  off.”  

            On December 4,
2006, the Brazoria County Children’s Protective Services (“CPS”) and the DFPS
filed suit seeking termination of appellant’s rights to A.R.B., C.J.T., and
A.J.[1]  On December 18,
2006, the trial court named CPS and DFPS temporary managing conservators of the
children and ordered appellant to (1) submit to a psychological assessment and
follow the recommendations, (2) complete parenting classes, (3) attend
counseling sessions with a therapist, (4) complete a drug and alcohol
assessment, and follow the recommendations, (5) remain drug and alcohol free,
(6) maintain a safe and stable home environment, and (7) comply with the
service plan pursuant to section 263.106 of the Texas Family Code (permitting
the court to render appropriate orders to implement or require compliance with
a service plan.).  At that time, the children were to remain with their
grandparents.

            In June, 2007,
Jennings received another report of additional physical abuse to the children. 
During her investigation, she learned that in the Spring of 2007, the children
were moved from their grandparents’ home to the home of appellant’s aunt whom
appellant had previously accused of physical abusing her.  After the discovery
of subsequent abuse, the children were placed in foster care.  A.J. was placed
with her paternal grandmother, and A.R.B. and C.J.T. were placed in foster
homes.

            On February 22,
2008, CPS and DFPS filed a second amended petition to terminate appellant’s
parental rights.  The petition alleged that appellant (1) knowingly placed or
knowingly allowed the children to remain in conditions or surroundings which
endanger the physical or emotional well-being of the children, (2) engaged in
conduct or knowingly placed the children with persons who engaged in conduct
which endangers the physical or emotional well-being of the children, and (3)
failed to comply with the provisions of the court order that specifically
established the actions necessary for her to obtain the return of the
children.  See Tex. Fam. Code Ann. § 161.001(1)(D),(E), & (O)
(Vernon 2008).  

            At trial,
Jennings testified she first received a referral about the safety of
appellant’s children in July, 2005, when A.R.B. was one year old and C.J.T. was
three days old.  The concerns were that appellant and the children were living
with appellant’s mother and stepfather in unsanitary living conditions. 
Further, appellant had previously accused her stepfather of sexually abusing
her.  The case was closed and appellant was directed to agencies that could
assist her.  The second referral came in October 2006, when A.R.B. was seen in
the hospital for burns to her face.  When Jennings questioned appellant about
why Jackson was cleaning A.R.B.’s face in the middle of the night, appellant
replied that they had run out of diapers several days earlier and A.R.B. had
soiled herself.  Jennings testified that appellant admitted to engaging in
domestic violence with Jackson while the children were either in the same room
or in an adjacent room.

            Dr. James
Lukefahr, a pediatrician in the child abuse division at the University of Texas
Medical School, testified that he recruited a nurse practitioner to conduct
physical assessments in Brazoria County.  The nurse practitioner’s assessments
of the children revealed that A.R.B. had second degree burns on her face.  The
pattern of burns indicated that something had been applied to her face to cause
the burns.  The splashing of boiling water would have affected deeper areas of
the face and was not the likely cause of the burns.  A.R.B. had a bruise on the
side of her face and a loop-shaped bruise on her right lower back.  The
injuries were not to areas that usually occur when a child accidentally injures
herself.  A.R.B. had several scars that neither appellant, nor her mother,
could explain when asked.  Further, A.R.B. had linear marks on her left lower
back, which were unlikely to have occurred from a fall.  She also had a
loop-shaped bruise in her genital area, which was indicative of abuse.

            At the time of
her physical assessment, A.J. was three and a half months old.  A skeletal
survey revealed she had four broken ribs that indicated they were the result of
squeezing forces applied to the chest.  Her injuries were consistent with a
finding of physical abuse.  The most significant finding in C.J.T.’s physical
assessment was the grandmother’s report that Jackson had shaved a gang sign
into the child’s eyebrow.  Photographs showed that a portion of C.J.T.’s
eyebrow was missing, but the photographs did not show any particular
configuration.  C.J.T. also had several scars that indicated abuse.  Dr.
Lukefahr recommended that the children not be placed in the care of the adults
who cared for them during this time period.

            Dr. Ralph Noble
examined the children when they were returned to CAC in May 2007, because they
were found living with appellant’s aunt rather than her father and stepmother. 
At that time, A.R.B. had new scars on her back that were consistent with
physical abuse.  She also had linear marks on her back that indicated they were
most likely the result of blows struck by a belt or strap-like implement.  

            Dr. Joanne Baer,
the psychologist who performed a mental and academic assessment of appellant,
testified that appellant had a history of mental illness, but was not taking
prescribed medication.  She had earlier reported physical and sexual abuse, but
had later recanted.  Dr. Baer found paranoid, borderline, and antisocial traits
in appellant’s personality.  Appellant’s ability to use verbal information to
solve problems is in the fourth percentile, which has an impact on her ability
to make decisions concerning her children.  Dr. Baer testified that this
“configuration of difficulties” in appellant’s personality placed the children
at risk for abuse or neglect.  The results of Dr. Baer’s testing revealed that
appellant was not amenable to treatment.  Dr. Baer concluded her testimony by
stating that she had “very high concerns” about permitting appellant to be
responsible for the children.

            Laura Jo
Martinez, a patrol officer for the Angleton Police Department, testified that
she was asked to help CPS workers remove appellant’s youngest child, S.T., from
appellant’s custody.[2] 
Officer Martinez testified that when the caseworker attempted to remove S.T.
from appellant’s custody, an altercation ensued with appellant, her mother, and
her sister in which Officer Martinez was assaulted by appellant’s sister.  Both
appellant and her sister were arrested for assault on a police officer.

            Jacinda
Ainsworth, a caseworker with DFPS, testified that she conducted periodic home
visits with appellant and supervised her visitation with the children.  She
testified that appellant exercised her bi-monthly visitation with the children,
but the children did not appear to have formed a bond with her.  In Ainsworth’s
opinion, appellant is not capable of caring for the children.  In their foster
homes, the children are doing well.  DFPS conducted four home studies in an
attempt to place the children with relatives.  One of the studies resulted in
A.J. being placed with her paternal grandmother.  A home study was conducted on
a maternal aunt to place A.R.B. and C.J.T., but she told DFPS she did not have
room for two children.  A home study was conducted on another relative, but she
could take only one of the children.  A final home study was done on
appellant’s aunt, but she was denied because an allegation of physical abuse
had been made against her.

            Provilla Scruggs,
a psychotherapist who counseled appellant, testified that she terminated
counseling services with appellant after appellant missed her second
appointment.  Scruggs did not believe appellant was capable of maintaining
healthy relationships that would protect her from additional violence.  She was
of the opinion that appellant would be unable to protect herself or her
children.

            Appellant
testified that each of her four children had different fathers and she was
still living with the father of the youngest child.   Appellant reported that
she had been sexually abused by her stepfather to whom her mother is still
married.   Appellant was first diagnosed with depression at the age of 14 and was
hospitalized four times for depression between the ages of 14 and 17.  She
stopped taking medication for depression because it was cost prohibitive.  She
admitted that her children went several days without diapers because she could
not afford to purchase them.  She has taken parenting classes and learned that
her violent relationship with Jackson was dangerous for the children.  She did
not know that A.J.’s ribs were broken, but had noticed that she had difficulty
crawling and walking.  Appellant completed the psychological assessment and
followed the recommendations, completed parenting classes, remained drug and
alcohol free, complied with the original service plan, and believes she
maintained a safe and stable home.  She admitted she had not completed
individual counseling.  She has gone to three different counselors because she
felt like the first two counselors were not helping her. 

            The case was
tried to a jury, which found that appellant (1) knowingly placed or knowingly
allowed the children to remain in conditions or surroundings which endanger their
physical or emotional well-being, (2) engaged in conduct or knowingly placed
the children with persons who engaged in conduct which endangers their physical
or emotional well-being, and (3) failed to comply with the provisions of the
court order that specifically established the actions necessary for her to
obtain the return of the children.  The jury further found that termination of
appellant’s parental rights was in the best interests of the children and that
Brazoria County CPS should be appointed sole managing conservator of the
children.

            In two issues,  appellant
asserts (1) the State failed to prove by clear and convincing evidence that
termination of the parent-child relationship is in the children’s best
interests, and (2) the jury erred in appointing Brazoria County CPS as the sole
managing conservator of the children.

Standard of Review

            Due process and
the Texas Family Code require DFPS to prove the necessary elements by the
heightened burden of proof of “clear and convincing evidence.”  See Tex.
Fam. Code Ann. § 161.001 (Vernon 2002); In re B.L.D., 113 S.W.3d 340,
353–54 (Tex. 2003).  “Clear and convincing evidence” means “the measure or
degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.”  Tex. Fam. Code Ann. § 101.007 (Vernon 2008).

When reviewing factual findings required to be made
by clear and convincing evidence, we apply a standard of review that reflects
this burden of proof.  In a factual-sufficiency review, we must determine
whether a fact finder could reasonably form a firm belief or conviction about
the truth of the allegations.  In re J.F.C., 96 S.W.3d 256, 266 (Tex.
2002).  If, in light of the entire record, the disputed evidence that a
reasonable fact finder could not have credited in favor of the finding is so
significant that a fact finder could not have reasonably formed a firm belief
or conviction, then the evidence is factually insufficient.  Id.

In reviewing the factual-sufficiency challenges to
the jury’s findings that Brazoria County CPS should be the sole managing conservator,
we examine the entire record, considering both the evidence in favor of, and
contrary to, the challenged findings.  Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986).  After considering and weighing all the evidence, we set aside the
fact findings only if they are so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.  Pool v. Ford Motor Co., 715
S.W.2d 629, 635 (Tex. 1986).  The jury is the sole judge of the credibility of
the witnesses and the weight to be given to their testimony.  GTE Mobilnet
of S. Tex. v. Pascouet, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied).  We may not substitute our own judgment for that of
the trier of fact, even if we would reach a different answer on the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998). 

Best Interests of the Children

In her first issue, appellant challenges the factual
sufficiency of the evidence that termination is in the children’s best
interest.  There is a strong presumption that the best interests of the children
are served by keeping the children with their natural parent, and the burden is
on DFPS to rebut that presumption.  In re U.P., 105 S.W.3d 222, 230
(Tex. App.—Houston [14th Dist.] 2003, pet. denied).  The Texas Supreme Court
has examined several factors in evaluating the children’s best interests, including
(1) the desires of the children, (2) the present and future physical and
emotional needs of the children, (3) the present and future emotional and
physical danger to the children, (4) the parental abilities of the person
seeking custody, (5) the programs available to assist those persons seeking
custody in promoting the best interests of the children, (6) plans for the
children by the individuals or agency seeking custody, (7) the stability of the
home or proposed placement, (8) acts or omissions of the parent that indicate
the existing parent-child relationship is not appropriate, and (9) any excuse
for the parent’s acts or omissions.  Holley v. Adams, 544 S.W.2d 367,
372 (Tex. 1976); In re U.P., 105 S.W.3d at 230. This list is not
exhaustive, nor is evidence required on all nine factors to support a finding
terminating a parent’s rights. Holley, 544 S.W.2d at 372; In re U.P.,
105 S.W.3d at 230.

In reviewing the factual sufficiency of the evidence
to support termination as it relates to the best interests of the children, we
examine the evidence in light of the Holley factors:

Desires of the children.  All three
children were under the age of five at the time this case was tried.  A.J. was
only three and a half months old when the children were removed from
appellant’s custody.  Therefore, we cannot determine with certainty their
desires.  However, the record reflects that all three children have adjusted
well to their foster families.  The record also reflects that the children have
not bonded with appellant.

Present and future physical and emotional needs
of the children.  Children need permanency, security, and medical
attention when they are injured.  Appellant’s failure to seek medical attention
for the children endangered their physical well-being.  Appellant failed to
notice that A.J. suffered four broken ribs despite medical testimony that such
an injury would cause excruciating pain.  The record reflected that all three
children suffered scarring and bruising,  and had not received proper medical
attention.  

Present and future emotional and physical
danger to the child.  Appellant had a history of placing herself in
environments where she and her children were subject to physical abuse.  When
the children were in appellant’s home, she and Jackson frequently engaged in
domestic violence.  The man with whom appellant lived at the time of trial had
a criminal history and a history with CPS.  The counselor testified that
appellant is incapable of protecting herself and her children from a violent environment. 


            Parental
abilities of the person(s) seeking custody.  The evidence shows that
appellant is unable to provide a safe and stable home for the children. 
Several home studies were conducted in an attempt to place the children with
relatives, but those studies revealed that those placements would be
inappropriate.              

Available assistance programs. 
Appellant completed parenting classes, but did not complete counseling
sessions.  The counselors testified that appellant was not amenable to
treatment.  Further, she failed to keep her counseling appointments indicating
a lack of willingness to participate in the available assistance.

            Plans for
the child[ren] by those individuals or by the agency seeking custody. 
The “permanency plan” of DFPS is to permit the adoption of the children.  The
DFPS caseworker testified that it was likely the children would be adopted
because they were young and had no long-term medical issues other than recovery
from their injuries.

            Stability
of home or proposed placement.  Appellant’s home is not a safe and
stable environment for the children because she is currently living with an
individual who has physically abused her and the children.  Appellant’s sister,
who allegedly assaulted a police officer, is frequently in appellant’s home. 
Further, appellant lives with a man who has a criminal history and history with
CPS.  Appellant received no child support because the fathers’ rights to the
children were terminated.  The children are currently living in foster care to
which they have adjusted and DFPS is seeking to place them for permanent
adoption.

            Acts or
omissions of the parent.  Appellant continues to live in a home with
domestic violence.  She engaged in domestic violence in the presence of her
children and failed to seek medical attention after they were physically abused
and suffered serious injuries.  The voluntary placement of the children was
unsuccessful because they were moved from the voluntary placement to a home
where they were physically abused.  

            Any excuse
for the acts or omissions of the parent.  Appellant was physically and
sexually abused by her stepfather and suffered from depression.  She has failed
to take medication for depression and has failed to complete counseling.  She
subjects herself to abusive environments, and has been unable to protect the
children from violence.

            Giving due
consideration to the evidence the jury reasonably could have found to be clear
and convincing, we conclude that the evidence is such that the jury reasonably
could form a firm belief or conviction that termination of appellant’s parental
rights is in the best interests of the children.  See In re M.G.D., 108
S.W.3d 508, 530 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). 
Accordingly, we overrule appellant’s first issue.

Conservatorship
Finding

In her second issue, appellant argues the jury erred
in appointing Brazoria County CPS as the sole managing conservator of the
children.  Appellant relies on section 263.404 of the Texas Family Code, which
provides the procedure for a final order appointing DFPS as managing
conservator without terminating parental rights.  Tex. Fam. Code Ann. §
263.404 (Vernon 2008).  Appellant’s second issue is dependent on a favorable
outcome to her first issue.  Because we have found factually sufficient
evidence to support the jury’s finding of termination, we overrule appellant’s
second issue.  

Accordingly, the judgment of the trial court is
affirmed.

 

                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

Panel consists of Justices
Yates, Frost, and Brown.

 









[1] Each of appellant’s
children has different fathers whose rights have also been terminated.





[2] At the time A.R.B.,
C.J.T., and A.J. were removed from appellant’s custody, she was pregnant with
S.T.