

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00169-CV

**IN RE E.F.Z.** and L.G.Z., Children

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-01600
Honorable Richard Garcia, Judge Presiding[1]

Opinion by:     Beth Watkins, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Beth Watkins, Justice

Delivered and Filed: August 28, 2019

AFFIRMED

H.H. appeals the trial court's order terminating her parental rights to E.F.Z. and L.G.Z. On appeal, H.H. challenges the sufficiency of the evidence to support the trial court's findings on the predicate statutory grounds for termination and that termination is in the children's best interest. We affirm the trial court's order.

### BACKGROUND

On July 20, 2017, the Texas Department of Family and Protective Services filed a petition to terminate H.H.'s parental rights to E.F.Z. and L.G.Z. On January 9, 2019, and February 5, 2019, a bench trial was held. At the time of the trial, E.F.Z. was seven, and L.G.Z. was six.

---

[1] The Honorable Linda Rodriguez presided over the bench trial and verbally pronounced the ruling. The Honorable Richard Garcia signed the written order.

At the conclusion of the bench trial, the trial court terminated H.H.'s parental rights on five grounds. H.H. timely filed this appeal.

### STANDARD OF REVIEW AND STATUTORY REQUIREMENTS

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found clear and convincing evidence of the following five predicate grounds under subsection 161.001(b)(1) to terminate H.H.'s parental rights: (1) voluntarily left the children alone in the possession of another without providing adequate support of the children and remained away for a period of at least six months; (2) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; (3) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being; (4) failed to support the children in accordance with H.H.'s ability during the period of one year ending within six months of the date of the filing of the petition; and (5) failed to comply with a court-ordered service plan. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(C), (D), (E,) (F), (O). The trial court also found clear and convincing evidence that terminating H.H.'s parental rights was in the children's best interest.

We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). Under these standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In*

*re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at \*4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

**PREDICATE STATUTORY GROUNDS**

Because termination under section 161.001(b)(1)(D) or (E) may have implications for a parent's parental rights to other children, appellate courts are mandated to address issues raised on appeal challenging a trial court's findings under those subsections. *In re N.G.*, No. 18-0508, 2019 WL 2147263, at \*4 (Tex. May 17, 2019). "[T]he evidence concerning [those] two statutory grounds for termination is interrelated." *In re J.T.G.*, 121 S.W.3d 117, 126 (Tex. App.—Fort Worth 2003, no pet.). Accordingly, we can consolidate our analysis of both grounds. *See id*.

Section 161.001(b)(1)(D) allows a trial court to terminate parental rights if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Under subsection D, the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being," although parental conduct can be a factor that contributes to this environment. *In re J.T.G.*, 121 S.W.3d at 125. "'Environment' refers to the acceptability of living conditions, as well as a parent's conduct in the home." *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id*. "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.) (internal quotation omitted). Subsection D permits termination based upon only a single act or omission. *Id*.

Section 161.001(b)(1)(E) allows a trial court to terminate a parent's rights if the court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection E, the trial court is asked to determine whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *See In re J.T.G.*, 121 S.W.3d at 125. Under subsection E, our analysis may not rest on a single act or omission; it must be "a voluntary, deliberate, and conscious course of conduct." *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

In the context of both subsection D and E, "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or mental health. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996); *In re J.T.G.*, 121 S.W.3d at 125. "The failure to provide appropriate medical care for a child is evidence a trial court may consider as conduct endangering the child." *In re R.S.-T.*, 522 S.W.3d at 113. A parent's lack of contact with a child and absence from the child's life are also evidence of endangering the child's emotional well-being. *See In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.–Houston [14th Dist.] 2003, pet. denied).

"In evaluating endangerment under subsection D, we consider the child's environment before the Department obtained custody of the child." *In re S.R.*, 452 S.W.3d at 360. "Under subsection E, however, courts may consider conduct both before and after the Department removed the child from the home." *Id*.

In this case, the evidence established that in July of 2017, E.F.Z. and L.G.Z. were removed from the home where they were living with their father D.Z. based on a referral received after their younger sibling M.Z. passed away from unknown natural causes. The investigator testified she smelled a strong odor of marijuana when she arrived at the home and described the home as very

dirty with roaches crawling throughout the home. In the kitchen, the investigator saw drug paraphernalia, including a hand torch and pipe that were accessible to the children. She also saw unknown pills and bowls and pots with molded food. The bathroom floor was covered with mounds of clothing and trash, and the investigator saw toothbrushes in the toilet bowl. The investigator testified E.F.Z. and L.G.Z. had very large open sores on their head and all over their body from lice which were crawling in and out of their ears. The children's hair was matted and tangled, and they were picking the lice out of their hair and eating them. Photographs of the children and the home at the time of the removal were admitted into evidence.

D.Z. told the Department's removing investigator that H.H. had not been in contact with the children for two years. H.H. testified D.Z. prevented her from seeing the children. However, H.H. also told the Department's investigator she visited the children at D.Z.'s residence three months before their removal and saw the children in dirty clothes and diapers with matted hair. H.H. further told the investigator that a couple months before that visit, she had the children overnight and shaved their heads because the lice was so bad. The Department's caseworker testified she initially believed D.Z. was preventing H.H. from seeing the children; however, her opinion changed during the pendency of the case. The caseworker testified D.Z. told her he never kept the children away from H.H., and H.H.'s explanation for the reason she did not see the children "went back and forth." H.H. also admitted she left the children in D.Z.'s care when she moved from the home in 2015 despite knowing that D.Z. used marijuana. And, before the children were removed by the Department, H.H. admitted she smoked marijuana daily. H.H.'s second psychologist testified H.H. was never able to explain the reason she left the children in D.Z.'s care. With regard to visiting the children, the psychologist testified H.H. told her D.Z. "[k]ept them away from her, hide them, then bring them out, hide them, then bring them out." Based on the foregoing, the trial court could have believed H.H. was aware the children were in an environment

that endangered their health. The trial court could also have believed H.H. allowed the children to remain in D.Z.'s care despite his conduct which endangered the children by voluntarily, deliberately, and consciously deciding not to take any action to protect them.

The evidence also established that at the time of the removal, H.H. was living with a man who had a criminal history and a prior case with the Department in which the Department found reason to believe he sexually abused one of his own children. Although H.H. stated she ended the relationship after she was provided this information by the Department in March of 2018, the caseworker testified H.H. knew of the history before their meeting, and the CASA worker testified she did not believe H.H. ended the relationship when she told the Department the relationship ended. The caseworker also testified H.H. had Facebook postings in November of 2018 stating she was engaged to another man who had an extensive criminal history and a history with the Department and who was in prison at the time of trial. The CASA worker testified H.H. continued to choose paramours who are violent offenders with extensive prison records.

Having reviewed the record, we hold the evidence is legally and factually sufficient to support the trial court's findings that H.H. knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical well-being and engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being. Because we find the evidence sufficient to support these two statutory predicate grounds, we do not address the other grounds. *See In re A.V.*, 113 S.W.3d at 362.

### BEST INTEREST FINDING

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the

child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id*. The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Furthermore, evidence that proves one or more statutory grounds for termination may be probative in proving termination is in the children's best interest. *In re C.H.*, 89 S.W.3d at 27.

Both the CASA worker and S.M., the foster mother who cared for the children from December of 2017 to August of 2018, testified L.G.Z. did not want to visit H.H. for extended periods of time. Several witnesses testified H.H. was not able to effectively parent the children. The CASA worker stated she saw no improvement in H.H.'s parenting skills during the pendency of the case despite her having completed two parenting classes. S.M. also testified H.H. never learned how to properly parent despite S.M.'s efforts to direct her. Although H.H. completed various tasks on her service plan, the caseworker testified she did not achieve the plan's goals. For example, H.H. was diagnosed with a mental illness requiring medication; however, she was not taking the medication. Although H.H. testified she would take the medication if she had to take it, she denied having any mental health issues and did not understand taking the medication was necessary to treat those issues. Because H.H. had not addressed her mental health issues, the

caseworker and H.H.'s psychologist did not believe she could effectively parent the children. When H.H. was referred to the second psychologist, she only attended three appointments and stopped attending appointments around the same time she posted on Facebook that she was engaged to the new paramour. When the children would visit H.H. for extended periods, they would have relapses in their behavior, and H.H. visited the children only one time from November through December of 2018. H.H. lived in the motel where she worked, and both the CASA worker and H.H.'s psychologist testified a motel room is not a safe, stable home for a child.

The children have been thriving since being removed. Although their behavioral issues required them to be removed from their first two foster homes,[2] their behavior stabilized in their third foster home. They were removed to a fourth foster home when the Department's plan changed from reunification to termination because the third foster home was not a foster-to-adopt home. The children have progressed from not knowing their letters to being able to read. The current foster home provides a stable, structured environment in which the children excel.

Having reviewed the record, we hold the evidence is legally and factually sufficient to support the trial court's finding that terminating H.H.'s parental rights was in the children's best interest.

## CONCLUSION

The order of the trial court is affirmed.

Beth Watkins, Justice

---

[2] These behaviors included wetting the bed, screaming and throwing tantrums instead of verbalizing issues, gorging themselves with food in the middle of the night until they vomited, and wanting to sleep during the day and stay awake at night.